NATHAN CONNALLY v. W. H. LYONS & CO.

No. 3191.

1. **Parties — Trustees — Beneficiaries.** — A trust estate was administered by a trustee, being a mercantile business. Creditors brought suit for goods sold the trustee. *Held*, that the beneficiaries were not necessary parties in the suit for the debt incurred in the management of the trust.

2. **Trust.**—There was no right of control reserved in the instrument creating the trust; no beneficiary had the right to control or withdraw his several interest until the time specified for the closing up of the business. This did not create a partnership.

3. **Personal Liability of Trustee for Debts He Incurs.**—Although the plaintiffs knew that the defendant was conducting the mercantile business of which he had control as trustee for the benefit of persons mentioned in the conveyance creating the fund, and charged the goods to *the trust*, the trustee was nevertheless personally liable for the price of the goods. This rule is not only in accordance with the authorities, but is a salutary rule in the interest of common justice.

APPEAL from Hopkins. Tried below before Hon. B. F. LOONEY, Special District Judge.

This suit was originally brought by W. H. Lyons & Co., merchants, of New York, against Nathan Connally, to hold him personally liable for certain goods, wares, and merchandise sold by them to the firm of Connally & Co., of Sulphur Springs, at his instance and request.

Defendant answered by general demurrer, and specially excepted to the petition that there was no allegation that the Connallys were insolvent and unable and unwilling to pay. Defendant excepted, also, that the petition disclosed a want of proper parties, and that the account was barred by limitation.

The demurrers and exceptions were overruled, and trial was had before the court, October 31, 1889, and judgment was rendered in favor of the plaintiffs. The judge filed his conclusions of fact and law, and the case has been appealed without a statement of facts. As far as pertinent to the appeal the facts found are as follows:

"1. I find that on the 25th day of February, 1875, M. A. T. Connally executed an instrument in writing, of which the following extracts evidence its nature and purpose, to-wit: 'In consideration of the fact that my success in said business is principally owing to the efforts and assistants of my father C. P. Connally, as well as to those of my brothers Drury A. Connally and Nathan Connally, who have not been sufficiently remunerated by me for their unremitting diligence, industry, and attention to my said business; commencing as I did on little capital, with their assistance that capital has increased till it now amounts by estimation correctly taken, including my storehouse on the west side of the public square of said town, to the sum of $13,455.83; in and for the further consideration of the natural love and affection I have for and bear to my said father and all my brothers, to-wit, Drury

A. Connally, Nathan Connally, Commodore P. Connally, Jr., David M. Connally, Lafayette T. Connally, James H. Connally, and Edgar Connally, I hereby sell, transfer, and convey in absolute sale, except the one-ninth of the amount of the same, which I reserve for myself and subject to my control, all my right, title, and interest in and to the goods, wares, and merchandise which I now have on hand, as well as moneys, notes, claims, and accounts due me and growing out of and with my said mercantile business carried on in Sulphur Springs, together with the lot of land and storehouse erected thereon, and which I am now occupying in my said business (reference is here made to record book for full description), all of which amounts to the sum of $13,455.83, and said property as aforesaid and described as aforesaid I now, in consideration as aforesaid, turn over and deliver to my said father, the said C. P. Connally, in good faith, being wholly out of debt at this time. I do so, however, in trust, except as hereinafter set out, as follows: Said sum of $13,455.83 is now by me divided into nine equal shares, each share amounting to the sum of $1495.09; the whole amount is still to be kept together and undivided, except as hereinafter provided, and my said father C. P. Connally is hereby appointed trustee of said fund, and is to continue said sum and its increase in amount, if any there be, in active and constant operation in the business heretofore by me pursued, to-wit, merchandising, and in his own name, or in such name and style as he may prefer, and is to keep correct accounts of all gains and losses, so that at the end of each year he can by his balance sheet correctly show how said business stands. The one-ninth part of the amount here by me transferred or assigned to my said father is transferred to him in absolute and unconditional sale, together with its increase. One-ninth part thereof with its increase, in case the said sum should by his management be increased, is reserved for myself, and he is to turn over the same to me whenever I or my assignee or legal representative shall demand of him so to do. The other seven-ninths and its increase shall go to the support and maintenance and education, or as much thereof as may in my father's estimation be necessary for that purpose, of my brothers, whose names I have already herein given. Any of my grown brothers, and when they shall become grown, who will remain with my said father, the said trustee herein, and assist him for reasonable wages, such as he may contract to give them, are to be boarded out of said fund, but not otherwise.

"'When and after each of my seven brothers shall become of 25 years of age, my said trustee shall advance and pay over to him his pro rata of the amount then on hand, and said trustee may advance and pay over said pro rata share to any one when he thinks safe and prudent to do so even before he arrives at the age of 25 years, and especially so if he seem inclined to attend energetically to any species

of business and prosper in said business; but no amount under this condition is to be advanced before the age of 25 years for uncertain or prodigal purposes. I mean by his pro rata above set forth, the one-seventh interest of the brothers' interest or part at the time the advancement shall be made, and without regard to the amount now transferred. The advancement when so made must be taken by said brother in full payment of his portion, without recourse on the main fund for further advancement. A final settlement shall not be demanded nor had, nor shall any of the beneficiaries of the trust herein created force by law or equity a final settlement by trustee, till my youngest brother Edward shall arrive at the age of 25 years; or, in case of his death, till the period of time when he would be 25 years of age if alive. My father, the said trustee, shall not under any circumstances be required to give bond to faithfully carry out the trust herein created. I trust only to his integrity to do so; and I further provide that said trustee, my father, the said C. P. Connally, shall, for his services in faithfully carrying out this trust, and for his services in managing said mercantile business, have and receive $1000 per annum of and out of said fund here conveyed in trust as above set forth. Witness my hand,' etc.

"2. That C. P. Connally accepted such trust, and continued to execute the same till his death.

"3. That on the 24th day of March, 1882, after the death of C. P. Connally, all the parties at interest being before the court, the District Court of Hopkins County, Texas, assumed jurisdiction, and appointed Nathan Connally, the defendant herein, and one of the beneficiaries in said trust, as trustee, with full power to execute the said trust according to the terms of the trust deed; and I find that he accepted said appointment and qualified thereunder and continued to operate and run such mercantile business under the style of Connally & Co. till on January 20, 1886, when the said business was attached by creditors."

Then follow the fourth, fifth, and sixth findings, which relate to three several statements made by the defendant to Dun & Co. and plaintiffs' commission merchant in New York, showing large excess of assets over liabilities.

"7. That on January 20, 1886, the concern of Connally & Co. was attached by creditors, and was indebted at that time, including the debt herein sued for, in the sum of $31,121.39, and had assets, as evidenced by the sheriff's invoice attached to the returns to the writs of attachment, of $20,000; and I also find that on January 18, 1886, a few days prior to the attachment, the defendant withdrew the deposits of Connally & Co. from the bank in Sulphur Springs, amounting to the sum of $4286, cash.

"8. That during the months of July, August, and September, 1885, the plaintiffs W. H. Lyons & Co. sold and delivered to Connally & Co.

merchandise to the amount of $6082.14, on credit, and that none of the same has ever been paid.

"9.   Finding that the goods were shipped on faith of representations as to credit.

"10.   That the plaintiffs, when the debt herein sued on was created, knew the capacity in which defendant Nathan Connally operated and conducted the business styled Connally & Co.; and I further find that the defendant Nathan Connally, in creating such indebtedness for Connally & Co., did not contract against his personal liability for the debt incurred.

"11.   Finding that at the time of the purchase of the goods from plaintiffs the defendant had in possession assets of Connally far in excess of the amount of plaintiffs' debt."

The judge concluded, as a question of law, that Nathan Connally is individually liable to plaintiffs for the amount of their said debt, with interest.   That the fact that defendant as trustee created the debt, and did not at the same time contract against personal liability for the same, made him individually liable.

Plaintiffs' original petition was filed April 2, 1886, and sought judgment against the defendant Nathan Connally as trustee of the trust estate of Connally & Co.   On August 1, 1887, plaintiffs filed their first amended original petition, and sought judgment against defendant individually.

[This statement accompanied the opinion.]


*E. B. Perkins* and *Whittle & Son,* for appellant.—The character of the estate created by the deed of M. A. T. Connally is difficult to classify. In the first-place, it passed the title to the property, except as to the one-ninth interest reserved; the donor retained no title to the property conveyed.   The deed conveyed a one-ninth interest, absolutely, to C. P. Connally, trustee.   As to seven-ninths of the property, the trustee did not take title—the title vested in the seven brothers of the donor; but the trustee was given the power of managing, using, and controlling the entire amount.   The character of the use was specified, to-wit, in merchandising.

We submit that by the acquiescence of the donees the deed of M. A. T. Connally created a trading company or partnership, with C. P. Connally as managing agent and representative at a specified salary; that upon the death of C. P. Connally the partnership was dissolved, and when the parties came before the court and had another manager appointed it simply amounted to an agreement of partnership with a managing agent at a salary, and that any debt created by such agent is the debt of the partnership, and must be established against it just as any other debt contracted by an agent for his known principal. Patterson v. Lilly, 90 N. C., 82.

The true test in this character of case is, was the manager the agent of the parties in interest? Pars. on Con., 6 ed., p. 155; Wheatcroft v. Hickman, Cox v. Hickman, 90 Eng. C. L., 47.

A partnership may be constituted so as to place the authority of making contracts for the firm in one partner only. Lineeth v. Cromley, 29 Kans., 47; Johnson v. Bernheim, 86 N. C., 339; Smith v. Denison, 101 Ill., 531; 1 Lind. on Part., 2 Am. ed., 124, and note 1.

One dealing with a voluntary unincorporated association as an association, and not trusting the credit of a member, can not hold such member individually liable. Stafford v. Parmer, 47 Conn., 443. Unincorporated joint stock companies with managing officers or trustees must sue and be sued as partners, and not by or against their managers or trustees (2 Lind. on Part., 2 Am. ed., 760, 761); and whether Connally & Co. were a mercantile copartnership or a trust estate it matters not, for in either event we insist that the judgment of the court below should be reversed; for if the firm of Connally & Co. was a copartnership—and we insist that it was—and appellant was its business manager, and these facts as to the partnership and business manager being known to appellee at the time of the sale of the goods mentioned in appellee's petition—which they were—then it will not be insisted by appellee that a judgment against appellant, who is not a member of said firm, could be affirmed by this court; and if it is insisted that appellant was a member of the firm of Connally & Co., then appellees would not insist that this judgment should be affirmed, because it is not even pretended that the other members of said firm are insolvent or beyond the reach of the process of the court below; and if it is a trust estate, as contended by appellee, then this judgment should be reversed, because there is nothing in the record to show that a demand for the payment of appellees' debt was ever made on the beneficiaries of said trust, nor that said beneficiaries were insolvent and unable or unwilling to pay said debt, nor that they were beyond the reach of the process of the court below.

*E. C. McLean*, for appellees.—1. A trustee is personally bound by the contracts which he makes as trustee, even when designating himself as such.

2. If a trustee, contracting for the benefit of a trust, wants to protect himself from individual liability on the contract, he must stipulate that he is not personally responsible, but that the other party is to look solely to the trust estate. Taylor v. Mayo, 110 U. S., 330–338; Norton v. Phelps, 105 U. S., 1072; Burlingame v. Brewster, 22 Am. Rep., 197.

GARRETT, Presiding Judge, *Section B.*—Appellant's first, second, and eighth assignments of error raise the question of parties as presented by his exceptions to the petition, but only on the ground that the persons who were claimed to be necessary parties were such as

beneficiaries in a trust, and not as partners. If Connally & Co. were a partnership, all of the partners would be necessary parties to an action of debt for the price of the goods. It is not necessary to consider whether they would be in a suit for the value of the goods, if the possession thereof was obtained by the fraudulent representations of the defendant, because the court arrived at no conclusion that the goods were fraudulently obtained. But if Connally & Co. was a trust estate managed by the defendant as trustee, it is clear that the beneficiaries of the trust would not be necessary parties to a suit for a debt incurred in the management of the trust, if the trustee should be personally liable therefor; and this question will be considered under another assignment raising that question.

Mere participation in profits does not constitute partnership, although there should be a contract from which they were derived. Buzard v. Bank, 67 Texas, 89. There was no contract of partnership in this case. The defendant Nathan Connally acted as trustee under an appointment from the court, and had the entire control and sole management of the business. There was no right of control whatever reserved in the instrument executed by M. A. T. Connally to her father C. P. Connally, as trustee, either for herself or for the beneficiaries as such. A test of partnership is the right of control over the property or profits, or to make disposition thereof. 1 Bates on Part., sec. 37. There was no right whatever in the brothers of the grantor, who were beneficiaries therein, either to control or withdraw their several interests. From the terms of the instrument the business was to be conducted until the youngest was 25 years of age, or, if he died before that time, to such a time as he would have been 25 if he had lived. We must also infer that at least some of the beneficiaries were minors, and it will not be contended that they could be partners, although the instrument might indicate a partnership. The finding of the court is further strengthened by the fact that there is no statement of facts brought up with the record, and there may have been proof of other facts to sustain his conclusion that Nathan Connally was the trustee of a trust estate. We think, however, that a proper construction of the instrument alone would lead to the same conclusion. There was no evidence to make the beneficiaries partners by holding out, but such a partner would not be a necessary party.

Appellant's ninth and tenth assignments of error are as follows:

"The court erred in its conclusions of fact and law in finding that the estate of Connally & Co. was a trust estate and Nathan Connally was trustee of same, and finding further that goods, wares, and merchandise mentioned in plaintiff's petition were sold and delivered to Connally & Co. by plaintiffs, and then rendering judgment against defendant Nathan Connally for the debt here sued on.

"The court erred in its finding of law that defendant Nathan Connally would be liable for said debt personally, because he failed to make a contract with plaintiff exempting him from said liabilities."

As we are of the opinion that a trust estate was created by the instrument of conveyance from M. A. T. Connally to her father C. P. Connally, it remains only to consider under the above assignments whether or not the trustee (the defendant) was personally liable for the goods purchased by him for the trust estate from plaintiffs.

Trustees of a corporate body with defined powers are not personally liable, and such has been the recognized rule in this State from the early decisions. Traynham v. Jackson, 15 Texas, 170; Dyer v. Sullivan, 18 Texas, 771; Gonzales College v. McHugh, 39 Texas, 348; Snyder v. Wiley & Porter, 59 Texas, 449. But whether or not the trustee of a voluntary association, or a trust estate, is personally liable has not been before our Supreme Court in any case that we can find. That such trustees should be held personally liable is reasonable, because they have in their own hands the means wherewith to reimburse themselves, and should not assume a debt for the benefit of an estate of which they have the sole management and control without prospect of funds for payment thereof. If this principle needed to be enforced by way of illustration, it may be done by the fact that the defendant a few days before the attachment withdrew from the bank the deposit of Connally & Co., amounting to over $4000 in cash. In Hill on Trustees, *533, the doctrine is broadly stated, that "a trustee who carries on any trade with the trust assets for the benefit of the cestui que trusts will be responsible to the creditors, not only to the extent of the trust assets, but also with the whole of his own property, and he may be made bankrupt and proceeded against in the same manner as any other trader. And it is immaterial that the trade is carried on by him in consequence of an express direction in the trust instrument; although the trust property will doubtless be primarily liable to the creditors, and will be first applied so far as it will go in discharge of the liabilities." Purchases by trustees when made in obedience to the trust impose upon them a personal liability; the seller must look to them for payment, and they must look to the trust estate for reimbursement. Taylor v. Mayo, 110 U. S., 330; Hewitt v. Phelps, 105 U. S., 400; Sanford v. Howard, 29 Ala., 684; New v. Nicoll, 73 N. Y., 127. This doctrine is also recognized in Mason v. Pomeroy (Mass.), 24 Northeastern Reporter, 202, and Odd Fellows Hall Association v. McAllister (Mass.), 26 Northeastern Reporter, 862. The Alabama case was where a guardian was held liable. It is also reported in 68 American Decisions, 101, which see for note as to executors and administrators. Our statute of frauds (Rev. Stats., art. 2484) has no application to the facts of this case, and does not affect the rule that would hold the trustee personally liable. Although the plaintiffs knew that the defendant was conduct-

ing the mercantile business of which he had the control and management as trustee for the benefit of the persons mentioned in the conveyance from M. A. T. Connally to her father C. P. Connally, and charged the goods, when sold, to Connally & Co., the defendant was nevertheless personally liable to the plaintiffs for the price of the goods, and it was not necessary first to establish the account as a debt against the trust estate. This rule is not only in accordance with the authorities, but is a salutary rule in the interest of common justice. Since the trustee was personally liable, it was not necessary that the beneficiaries should be made parties to the suit.

The account sued on was not barred by limitation when plaintiffs' first amended original petition was filed, so it is unnecessary to inquire whether or not the amended petition set up a new cause of action. It appears from the petition that the account was not due for a time after the date of the items, from which two years would extend past the filing of the amended petition; so the demurrer setting up limitation was properly overruled by the court.

We conclude that there was no error in the judgment of the court below, and that the same should be affirmed.

*Affirmed.*