JAMES McCoy COMPANY, Appellant, v. M. H. SMITH, Appellee.

TRUSTS: Execution of Trust—Assignment for Benefit of Creditors —Personal Liability of Trustee. A privately appointed trustee for the benefit of creditors, with full title to and management over the property of the debtor, is *personally* liable for the debts incurred by him, either personally or through his agent, *in the execution of the trust,* unless he provides against such personal liability by agreement with the holders of such debts.

TRUSTS: Execution of Trust—Assignment for Benefit of Creditors—Terms of Trust.. The terms of a trust deed exempting the trustee from all personal liability in the execution of the trust becomes quite immaterial when it appears that the claim sued upon accrued during the execution of the trust and such terms were never brought to the attention of such creditor.

TRUSTS: Execution of Trust—Trustee as Agent of Trustmaker. A privately appointed trustee to whom the title to the debtor's property passes for the benefit of creditors is not the agent of the debtor, the trustmaker.

ACCOUNT, ACTION ON: Evidence—Sufficiency. Sufficient proof of an account appears from the fact that defendant (a) admitted the account in his letters, (b) ratified the account by making partial payments thereon, and (c) in portions of his argument treated the account as genuine.

ACCORD AND SATISFACTION: Nature and Requisites—Unconditional Payments. Payments neither tendered nor received in full satisfaction of a claim fall short of an accord and satisfaction.

*Appeal from Scott District Court.*—WILLIAM THEOPHILUS, Judge.

NOVEMBER 17, 1917.

Action on account for goods sold and delivered to the defendant as trustee. The cause was tried to the court without a jury, and judgment entered for the defendant, dismissing plaintiff's petition. Plaintiff appeals.—*Reversed and remanded.*

*Cook & Balluff,* for appellant.

*Isaac Petersberger,* for appellee.

Gaynor, C. J.—This is an action at law

1. Trusts : execution of trust : assignment for benefit of creditors : personal liability of trustee.

to recover for goods sold to the defendant as trustee of the Cash Mercantile Company of Wapello, Iowa, or as trustee of J. B. Cecil, trading under that name. The action is in two counts. One count seeks to recover on an express contract, and the other on a *quantum meruit.* The plaintiff claims that defendant was conducting a store at Wapello as trustee, and for the benefit of the creditors of the Cash Mercantile Company; that, at his instance and request, plaintiff sold and delivered to him the articles herein sued for. The defendant filed a general denial, and stated that, on May 22, 1912, one J. B. Cecil, trading as the Cash Mercantile Company, of Wapello, was financially involved, and, in order to straighten and adjust his affairs, appointed defendant as trustee of his property, the terms of the trust providing that defendant was not liable for any omissions or neglect so long as he performed his duties as trustee in good faith; that J. B. Cecil was left in charge of said business pending final settlement; that the defendant never did any business personally with the plaintiff; that, shortly before April 24, 1914, when arrangements were made to liquidate the affairs of Cecil, defendant was advised that plaintiff, without defendant's knowledge or consent, had sold to Cecil, in the name of the defendant as trustee, a bill of merchandise in the sum set forth in plaintiff's peti-

tion; that the defendant included plaintiff's claim with other claims due from him as trustee for goods furnished under said trusteeship; that thereupon the funds on hand were prorated on the basis of 24 per cent., and plaintiff received and accepted the sum of $175.62 as a settlement in accord and satisfaction of any claim held by it against the defendant. In an amendment to his answer after the submission of the case, the defendant, to conform the pleadings to the proof, as he claims, alleged that the terms of the trusteeship under which he was acting, especially stipulated that he should not be individually liable in the execution of said trust, and that all persons transacting business with the defendant as trustee were to look solely to the trust estate; all of which was denied by the plaintiff. Many of the allegations of defendant's answer were unproven, as will hereafter appear. Upon the issues thus tendered, the cause was tried to the court. The plaintiff introduced his testimony and rested. The defendant introduced no testimony. The court found for defendant.

It appears from the evidence and the admissions of the parties that, in May, 1912, defendant was appointed trustee for one J. B. Cecil, trading under the name of the Cash Mercantile Company of Wapello; that his appointment was for the benefit of a number of creditors; that after his appointment he continued the business, and left Cecil in charge of it; that, in the middle of June, 1913, the first sale of goods was made by the plaintiff through a traveling salesman; that this salesman was told by Cecil, at the time of the purchase, of the trusteeship, and was directed by Cecil, who was in charge of the business, to bill the goods to M. H. Smith, trustee, and was assured that Smith would pay the bills; that plaintiff then continued to sell goods to J. B. Cecil, in the name of Smith, as trustee, until the bill amounted to $731.76; that, after the account had accrued, plaintiff informed defendant, Smith, of the fact that it had furnished

the goods. This was about October 18, 1913. In response to such notice, defendant wrote, on October 18, 1913:

"Your letter of the 16th received, and in reply beg to advise that the writer (defendant) is acting in the capacity of trustee of the Cash Mercantile Co. of Wapello, Iowa, and mail addressed to me in care of this firm will be received. If your inquiry is in connection with the Cash Mercantile Co. of Wapello, Iowa, perhaps I can save you time in saying that, unless Mr. Cecil's parents come to his rescue next week, by advancing sufficient money to put him on his feet, I shall proceed to close out this business, either by sale of everything in a lump, or, if necessary, piecemeal, and will take care of your account against this concern at the earliest possible moment."

On November 21, 1913, defendant wrote:

"More than a year ago, this business was turned over to me as trustee in a practically bankrupt condition. * * * The business has been continued along the most conservative lines, * * * and very little headway has been made since the writer's appointment as trustee. * * * With reference to the payment of your account, will say that at this time I am working, endeavoring to effect a settlement whereby Mr. Cecil's parents come to his assistance. If I am unable to arrange this matter, the business will be shortly closed out, and, of course, the *current* bills will be paid as promptly as possible, and the balance distributed among the *old* creditors. For your own good, I would strongly recommend that you discontinue shipping any goods to the Cash Mercantile Company until further advice, and as above stated, will take care of your account just as soon as possible."

On April 24, 1914, the defendant sent a circular letter to the creditors of the company, among whom was this plaintiff, in which it was recited:

"The present condition of the business is as follows:

Cash in bank.............................$ 855.69
Book accounts in bank for collection......... 792.92
Book accounts with local lawyer............ 1,377.06
Fixtures, estimated sale price, exclusive of auto-
    mobile .............................. 375.00
Remaining mdse. on hand, estimated sale price. 125.00
International Delivery Auto, estimated sale
    price ................................. 75.00

                                Total    $3,600.67

"Incurred since trusteeship for merchandise .. 3,533.76

"The present available funds, $855.69, are being pro-rated today on the amount incurred since trusteeship, on the basis of 24 per cent. As fast as the remaining assets can be turned into money, further distributions will be made on the same accounts."

Among these accounts is plaintiff's account now in suit.

At this time, the defendant sent the following draft, presumably with this circular letter:

                        "Wapello, Iowa, April 24, 1914.

"The Citizens Bank: Pay to the order of James McCoy & Company One Hundred Seventy-five and 62-100 Dollars.

                "(Signed by Defendant, Trustee.)"

This sum apparently is the 24 per cent. referred to in this circular letter.

On May 25, 1914, the defendant wrote the plaintiff, in substance, that he was in receipt of a letter from Burlington creditors, which led him to believe that within the next two or three days he would receive the acceptance of all the creditors of the company, and would do his best to close affairs as promptly as possible, and would advise the plaintiff what the deficiency might be, so that the plaintiff might reach a decision as to whether or not it would take

Cecil's notes for whatever deficiency might remain, and said that the note proposition might be a short one, for the reason that Cecil's mother was, right at that time, "critically ill." To this letter, on May 29, 1914, the plaintiff wrote:

"The settlement of the affairs of the Cash Mercantile Company is a matter about which we have no concern. Our account is with you, and, of course, we hold you for the payment of the same."

Other letters passed between the parties, but their contents are not material to this controversy.

2. TRUSTS: execution of trust: assignment for benefit of creditors: terms of trust. This is substantially all the material evidence in the record. From this record it appears that the defendant, as trustee for the creditors of this bankrupt company, placed Cecil in charge, and Cecil bought these goods from the plaintiff; that these goods were sold by the defendant through Cecil and their proceeds taken possession of by the defendant; that the defendant had full control and management of all the property turned over to him as trustee, managed and controlled the business, directed the disposition of the property. He now claims that he is not liable to the plaintiff because of the provision in the deed under which he assumed his duties as trustee, hereinbefore set out. The fact is, however, that the record does not disclose any such exemption as contended for, available to the plaintiff. The trust deed was not in evidence. The only place where it appears that such provision was in the trust deed is the statement made by the defendant in his pleading, and in letters written by him to the plaintiff. But whether that provision existed in the trust deed or not, it is immaterial, for the reason that it nowhere appears to have been brought to the attention of these plaintiffs before the goods were sold to the defendant, or that

plaintiff consented thereto.   A trustee to
3. Trusts: exe-  whom the title to the property passes, and
cution of
trust: trustee  who assumes to act in the conduct of the
as agent of
trustmaker.   business transferred to him by the trust
deed, is in no sense the agent of the trust
maker in contracting as trustee.   The assets in his hands
are held in trust for the creditors of the insolvent concern,
with, of course, an obligation to account to the trust maker
for any balance that remains after settlement with the
creditors.   Debts contracted by the trustee in the manage-
ment of the business are not the debts of the insolvent con-
cern, nor are they the debts of the trust maker as between
him and the creditors.   Upon delivery of the trust deed and
of the property covered by the trust deed, the title to the
property passed to the trustee, with power to manage and
control the same, to carry on the business if he should so
elect; but in the carrying on of the business, he became
the principal as to subsequent creditors, whether he acted
by himself or through one entrusted by him with the man-
agement and control of the affairs covered by the trust deed.
We are not without authority for what we have said.   In
*Hackman v. Maguire,* 20 Mo. App. 286, it was held that a
trustee to whom the legal title of the trust property passed,
is liable personally to creditors for debts contracted by
him in the management of the business; this whether he
acted as an individual or as trustee in creating the debt.   In
*Koken Iron Works v. Kinealy,* 86 Mo. App. 199, it was held
that, if a trustee contracting debts for the benefit of a trust
wants to protect himself from individual liability upon con-
tracts made by him, he must stipulate that he is not to be
personally responsible, but that the other party is to look
solely to the trust estate; otherwise he will be liable, al-
though he contracts as trustee.   In *New v. Nicoll,* 73 N. Y.
127, in discussing the same question, that court said:

"The general rule undoubtedly is that a trustee cannot

charge the trust estate by his executory contracts unless authorized to do so by the terms of the instrument creating the trust. Upon such contracts he is personally liable, and the remedy is against him personally. But there are exceptions to this general rule. When a trustee is authorized to make an expenditure and he has no trust funds, and the expenditure is necessary for the protection, reparation or safety of the trust estate, and he is not willing to make himself personally liable, he may by express agreement make the expenditure a charge upon the trust estate. In such a case he could himself advance the money to make the expenditure, and he would have a lien upon the trust estate, and he can by express contract transfer this lien to any other party who may upon the faith of the trust estate make the expenditure. * * * If he was authorized to make any contract about them, it was simply the ordinary contract in such cases, which would bind the trustee personally, and not the trust estate."

In *Blewitt v. Olin*, 14 Daly (N. Y.) 351, the court said:

"The liability of the defendant does not at all depend upon his having trust funds in his hands. If, in person or by an agent, he orders work to be done upon the trust property, he is personally liable, whether he has trust money in hand or not. It is no answer to a debt that he has incurred, and for which he is by law personally liable, that he has paid out all the trust funds that he has received."

The same doctrine is recognized by this court in *Gates v. McClenahan*, 124 Iowa 593. In *Connally v. Lyons*, 82 Texas 664 (27 Am. St. Rep. 935), the Texas court, discussing this question, said:

"As we are of the opinion that a trust estate was created, * * * it remains only to consider * * * whether or not the trustee (the defendant) was personally liable for the goods purchased by him for the trust estate. * * *

That such trustees should be held personally liable is reasonable, because they have in their own hands the means wherewith to reimburse themselves, and should not assume a debt for the benefit of an estate of which they have the sole management and control without prospect of funds for payment thereof. * * * Purchases by trustees, when made in obedience to the trust, impose upon them a personal liability; the seller must look to them for payment, and they must look to the trust estate for reimbursement."

In *McIntyre v. Williamson*, (Vt.) 47 Atl. 786, the Vermont court said:

"The action is general *assumpsit*. The court directed a verdict for the defendant on a motion which assigned as grounds therefor that the plaintiffs dealt with the defendant in his capacity as trustee, and that the plaintiffs' testimony disclosed no cause of action under the pleadings. * * * The dealings upon which the suit is based were had by and with the defendant as 'trustee.' He could become personally holden notwithstanding the use of this term. The legal estate was in him, and he was acting for himself in managing it. His official title served only as a personal description, and to separate the dealings from those pertaining to his personal matters. If he dealt in behalf of the trust estate, and within the limits prescribed by law, he can secure reimbursement from the fund. But the parties with whom he dealt can hold him personally liable, whatever his situation as regards the trust estate. The fact that they knew of the trust, and that he was dealing on its account, will not protect him. He could relieve himself from personal liability only by a definite understanding that the transactions were had upon some other responsibility."

The court erred in directing a verdict for the defendant. See also *Knipp v. Bagby*, (Md.) 95 Atl. 60.

In *Taylor v. Mayo* (*Taylor v. Davis*), 110 U. S. 330 (28 L. Ed. 163), that court said:

"A trustee is not an agent. An agent represents and acts for his principal, who may be either a natural or artificial person. A trustee may be defined generally as a person in whom some estate, interest, or power in or affecting property ·is vested for the benefit of another. When an agent contracts in the name of his principal, the principal contracts and is bound, but the agent is not. When a trustee contracts as such, unless he is bound no one is bound, for he has no principal. The trust estate cannot promise; the contract is therefore the personal undertaking of the trustee. As a trustee holds the estate, although only with the power and for the purpose of managing it, he is personally bound by the contracts he makes as trustee, even when designating himself as such. The mere use by the promisor of the name of trustee or any other name of office or employment will not discharge him. Of course when a trustee acts in good faith for the benefit of the trust, he is entitled to indemnify himself for his engagements out of the estate in his hands, and·for this purpose a credit for his expenditures will be allowed in his accounts by the court having jurisdiction thereof. If a trustee contracting for the benefit of a trust wants to protect himself from individual liability on the contract, he must stipulate that he is not to be personally responsible, but that the other party is to look solely to the trust estate. There are, no doubt, cases where persons occupy the position of quasi trustees, under the appointment of a court, such as receivers charged with the performance of active duties, in which it would involve much hardship to make them personally liable. But in such cases, as the parties have the right to prove their claims against the common fund, and have them allowed by the court, the officer may have the protection of the court by which he is appointed, restraining parties from bringing

suits against him, except where leave is given for the purpose of fixing the amount due."

In *Hussey v. Arnold*, (Mass.) 70 N. E. 87, that court said:

"If the trustees contracted in the usual way, without referring to anything which would limit the liability resulting from an ordinary contract, they are personally liable, * * * and judgment can be obtained and enforced against them individually."

*Mitchell v. Whitlock*, (N. C.) 28 S. E. 292. This was a civil action to recover the value of goods sold and delivered by the plaintiff to the defendant. In disposing of the case, the court said:

"A trustee purchasing goods or incurring any other liability on account of his trust is personally liable for the payment thereof, unless his liability is limited by an agreement, expressed or implied, with the creditor."

Though the deed creating the trust is not before us, and there is no competent evidence in the record as to its contents, the whole record discloses with reasonable certainty that there was in fact an instrument executed in which the estate of Cecil, or the Cash Mercantile Company, passed to this defendant as trustee, with full power to operate the business carried on by said Cash Mercantile Company, and to dispose of all its assets for the benefit of the existing creditors. There is no question from this record that the defendant assumed to act as trustee of the property, and carried on the business as such, and as such purchased the goods now sued for in this action.

4. ACCOUNT, ACTION ON: evidence: sufficiency. Some contention is made that the account is not proven. The account is admitted by the defendant in his letters, and ratified in the payment of the amount shown to have been paid by him, and in his promise to take care of the balance. It comes to us with rather poor grace for

the defendant now to assert that the account was not established, while at the same time stating in his written argument:

"Between the dates June 13, 1913, and January 13, 1914, the appellant, through their salesman, sold and delivered to J. B. Cecil, at Wapello, who remained in full charge of the Cash Mercantile Company after May 22, 1912, certain merchandise on credit to the amount of $731.76."

Giving the record the most liberal construction possible for the appellant, it would seem that the invoices for this amount were mailed to the appellee, defendant herein, as trustee, addressed to him at Wapello. There is no question that Cecil was left in possession of the assets of the Cash Mercantile Company by the defendant after his appointment as trustee, with power to represent the defendant as trustee in the conduct of the business. We are in no doubt that, under the record made in this case, plaintiff was entitled to a judgment against the defendant personally for the full amount of its claim, less the amount received. There could be no accord and satisfaction by the receipt of this partial payment under the record herein made. It was not tendered in full satisfaction of debt, nor was it received in full satisfaction of debt. At the very time it was sent with the circular letter, defendant said:

5. ACCORD AND SATISFACTION: nature and requisites: unconditional payments.

"As fast as the remaining assets can be turned into money, further distribution will be made on the same account."

We think the court erred in finding for the defendant in this suit, and the cause is therefore—*Reversed and remanded.*

WEAVER, PRESTON and STEVENS, JJ., concur.