## J. P. WEBSTER & SONS v. UTOPIA CONFECTIONERY. (No. 10195.)

(Court of Civil Appeals of Texas. Fort Worth. April 21, 1923. Rehearing Denied May 26, 1923.)

**1. Trusts &#9750;210—Trustee personally liable for debts incurred in business.**

One of several trustees of a business is personally liable for debts incurred by him, or by his cotrustees acting with his consent, in the conduct and operation of the business, in the absence of stipulation to the contrary in the contract with the creditor.

**2. Joint-stock companies and business trusts &#9750;15(1)—Members held personally liable for debts.**

Under Rev. St. tit. 102, c. 2 (articles 6149–6154), relating to unincorporated joint-stock companies or associations, members of association *held* personally liable for debts contracted in the conduct of its business, notwithstanding an attempted declaration of trust and exemption from liability on its articles, unknown to the creditor.

Appeal from Stephens County Court; J. W. Darden, Judge.

Action by J. P. Webster & Sons against the Utopia Confectionery Company. Judgment for defendant, and plaintiffs appeal. Reversed and rendered.

Benson & Dean, of Breckenridge, for appellants.

Hawkins, Hawkins & David, of Breckenridge, for appellee.

BUCK, J. J. P. Webster & Sons, alleged to be a partnership composed of J. P. Webster and three of his sons named, filed suit in the county court of Stephens county against the Utopia Confectionery Company, alleged to be a copartnership composed of J. A. Robbins, Frank Robbins, J. J. Hibbits, R. P. Richardson, Miss Mildred Duncan, Mrs. Mary Buckner, and C. A. Langford. The petition was filed June 29, 1921, and alleged that on May 20, 1921, and on June 1st, thereafter, plaintiffs sold to the defendants certain bills of goods amounting to $460.47. Only J. A. Robbins answered and pleaded that the Utopia Confectionery Company was a joint-stock association with a declaration of trust duly filed, and that in said declaration it was stated that no unit holder or shareholder would be liable for any debt or default of the company; that defendant Robbins never made any trade and was not an active member of the Utopia Confectionery Company, and that in fact he had before said goods were sold transferred his interest in the company to one J. J. Hibbits, and for this reason he was not an owner of any units at that time and was not liable for said goods furnished. Upon the trial, it appeared that

only J. A. Robbins and Mrs. Mary Buckner had been served with citation, and the other defendants had not been served, and the judgment recites that—

"Plaintiff stated to the court that it would ask no personal judgment against them individually but only as a partnership composed of all of the defendants."

Whereupon the court rendered judgment that plaintiff take nothing against any of the defendants, and that the Utopia Confectionery Company was a trust estate and none of the parties to the suit were liable as partners. From this judgment the plaintiffs have appealed.

Defendant Robbins introduced over the objection of the plaintiffs the following instrument:

"Articles of Agreement of Utopia Confectionery Company.

"That whereas J. A. Robbins, R. P. Richardson and J. J. Hibbits are now the owners of one Dodge Screen body car motor 454.308 and also the Bon Ton Bakery and all utensils and equipment connected therewith now located on Court street in Breckenridge, Texas, and they are desirous of adding a confectionery and other supplies and fixtures to the said business in accordance with the agreements and stipulations herein contained.

"Now therefore in consideration of the sum of ten dollars and other valuable consideration and stipulations and agreements herein contained cash in hand paid by the said Utopia Confectionery Company, the receipt of which is hereby acknowledged and for the purpose of inducing others to purchase into the said project, we do hereby agree to assign, sell and convey and do by these presents sell, grant and convey unto the said Utopia Confectionery Company all our title and interest in and to the said business aforesaid.

"It is understood and agreed that the said property and the rights and privileges is worth at a reasonable rate of $9,000, and the same is hereby divided into units of the par value of $100 each and there are to be 90 units which are evidenced by a certificate issued by the Utopia Confectionery Company signed by the president and secretary.

"That the said J. A. Robbins, R. P. Richardson and J. J. Hibbits, together with all other persons who may hereafter buy units in the said company do herein and hereby create and adopt a joint stock association under and by virtue of the declaration of trust, and this declaration of trust by virtue of the laws of the state of Texas and the said company is herein designated a syndicate.

"That the officers of the said Utopia Confectionery Company will be a president, a vice president, and a secretary and treasurer and that until elected by the stock or units holders the officers again upon a meeting to be called by ten days' notice for such purposes by some stock or units holder the following shall compose the officers and trustees, to wit:

"J. J. Hibbits, president, J. A. Robbins, vice president, and R. P. Richardson, secretary and treasurer, and that the affairs of this syndicate shall be owned and managed entirely by the said trustees and until after the election of the trustees, J. J. Hibbits, J. A. Robbins and R. P. Richardson shall be trustees of the said syndicate.

"The moneys and affairs of this said syndicate shall be controlled by the said board of trustees and that the funds shall be collected and the property and funds held and disposed of by the said trustees and the said trustees shall set aside $1,000 over and above the expenses of the said business and then thereafter any and all moneys shall be divided or prorated equally between the unit holders and mail to each their proportionate share on the 10th day of each month, after the said $1,000 is set aside as a reserve fund for the operating of the business.

"That the said trustees shall have the right to buy and sell and trade and bind the said syndicate and that the action of the said trustees shall and will be the acts and deeds of the said syndicate. That the units held by each and the same shall be signed by the president and secretary of the said syndicate.

"It is also understood that the issuing of the said units are to be owned and held by each units holder and the same shall be fully paid up and nonassessable for any purpose whatsoever and the said unit holder shall in no instance be charged or held liable for any debts, defaults or liabilities of the said syndicate and each and all parties dealing with the said syndicate shall be chargeable with notice of this declaration of trust.

"That it is herein and hereby agreed that the said J. J. Hibbits, J. A. Robbins and R. P. Richardson shall bear all expenses incidental to the consumption and completion of the said declaration of trust which shall be depended upon and shall be read and construed in connection therewith and all purchasers of units in said syndicate shall be chargeable with notice of the contents of the declaration of trust and that the same shall become fully effective from and after the date of the filing of the same.

In witness whereof the said J. J. Hibbits, J. A. Robbins and R. P. Richardson, officers and trustees hereinabove mentioned have set their hands and executed the said articles of agreement and their acceptance of the trust hereinabove specified for themselves and for their interest holders in the said syndicate as aforesaid.    J. A. Robbins.

"J. J. Hibbits, Pres.
"R. P. Richardson.

"The State of Texas, County of Stephens

"Before me, the undersigned authority, a notary public in and for Stephens county, Texas, on this day personally appeared J. A. Robbins, J. J. Hibbits and R. P. Richardson, known to me to be the persons whose names are subscribed to the foregoing instrument and acknowledged to me that they executed the same for the purposes and consideration therein expressed.

"Given under my hand and seal of office this 5th day of April, 1921. B. B. Chappel, Notary Public, Stephens County, Texas.

"Filed April 6, 1921, and recorded in Vol. 98, page 593, Deed Records Stephens County, Texas."

Robbins testified that 'he was not interested in the Bon Ton Bakery mentioned in the declaration of trust, and that he never had any interest in the Utopia Confectionery Company and never authorized any one to use his name in connection therewith or state that he was a partner with any other person in said Utopia Confectionery Company, or any other concern. He further testified:

"Yes, I signed what purports to be a declaration of trust with J. J. Hibbitts and R. P. Richardson. I also signed a bill of sale from myself to J. J. Hibbitts for my interest in the Utopia Confectionery Company and acknowledged the same before B. B. Chappel on the 8th day of June, 1921. I signed this instrument at the request of Frank Robbins, my brother. Yes, I signed and acknowledged said declaration of trust (shown above), but I did not have anything to do with the business, other than joining in these instruments. I took no part in the store and had nothing to do with the buying and selling of the goods. I do not think there was any stock or units issued to any one. There was not any issued to me."

The assignment by J. A. Robbins to J. J. Hibbits, conveying any and all interest which Robbins had in and to the Utopia Confectionery Company, was executed June 8, 1921, and filed in the deed records of Stephens county, July 5th, thereafter.

Ira Clements, manager of the plaintiff company, a wholesale grocery concern, testified: That it was his duty to pass upon prospective customers and their financial reliability and whether or not the company would sell such prospective customers goods on open account. That some time prior to May 20, 1921, the Utopia Confectionery Company wanted to purchase from J. P. Webster & Sons groceries and confectionery; that J. J. Hibbits and R. P. Richardson were then conducting the business. Upon inquiry from one or the other, or both of them, they said that the Utopia Confectionery Company was a partnership composed of J. J. Hibbits, R. P. Richardson, and J. A. Robbins. It was suggested that if the plaintiff would make inquiry at one of the local banks, it would find that J. A. Robbins was worth from $150,000 to $200,000. That after he made the investigation at the bank he became satisfied with the reliability of J. A. Robbins. He further testified that he did not know anything about the Utopia Confectionery Company operating under a declaration of trust, or as a trust estate; that at the time plaintiff sold the goods witness believed the Utopia Confectionery Company to be a partnership and that J. A. Robbins was a member of the firm; that the application to purchase the goods was made about 30 days prior to the delivery, and during this time he made investigation as to the reliability of Robbins and became satisfied that he was perfectly responsible for any obligations of the Utopia Confectionery Company.

He further testified that the goods were delivered to the Utopia Confectionery Company and that a delivery of such goods to the amount of $437.86 was made on May 20, 1920, and receipted for by R. P. Richardson, and that $22.61 worth were delivered on May 31st, and receipted for by "Jack" (evidently meaning J. J. Hibbits).

No question is raised as to the reasonable value of the goods sold by plaintiff, although no other evidence other than that which has been heretofore referred to is in the statement of facts as to such value; nor did the plaintiff attach a verified statement of its account.

[1] Wrightington, on Unincorporated Associations, p. 155, § 44, says:

"The important question in regard to all these forms of organization is as to the rights of creditors in the collection of their claim. In the absence of some stipulation in the contract to the contrary, it is well settled that one who contracts with a trustee has a contract right at law against the trustee personally, since courts of law purport to ignore the existence of trusts and the trustee does not act as agent for his beneficiaries, but is himself the principal. * * * 'Ordinarily' (quoting from Hussey v. Arnold, 185 Mass. 202, 70 N. E. 87) 'in the absence of special limitations, trustees bind themselves personally by their contracts with third persons. Actions at law upon such contracts must be brought against them and judgments run against them personally. This is because the relations of the cestuis que trust to their contracts are only equitable and do not subject them to proceedings in a court of common law and the property held in trust is charged with equities which hold it aloof from the jurisdiction of a court of law to take it and apply it in payment of debts created by the trustees. Such debts, if proper charges upon the trust estate, can be paid from it under the authority of a court of equity. * * *' If the trustees contracted in the usual way without referring to anything which would limit the liability resulting from an ordinary contract, they are personally liable to these petitioners and judgment can be 'obtained and enforced against them individually; but the trust property cannot be held under an attachment nor sold upon an execution for their personal debts."

There is some conflict of authority as to the liability of the shareholder in a trust whose declaration provides, as does this declaration, that to the shareholder is reserved the right to elect the successors of the trustees. In the case of Crocker v. Malley, 249 U. S. 223, 39 Sup. Ct. 270, 63 L. Ed. 573, 2 A. L. R. 1601, the Supreme Court of the United States held that a provision in the declaration of trust that the written consent of a majority in interest of cestuis que trust was required for the filling of a vacancy of a trustee did not prevent the association from being a pure trust. See Peterson v. Chicago, etc., Ry. Co., 205 U. S. 364, 390, 27 Sup. Ct. 513, 51 L. Ed. 841, cited in Wrightington on Unincorporated Associations. Other authorities

might be cited to the contrary. But irrespective of Robbins' liability as a shareholder, we think that undoubtedly he was liable personally as a trustee. The evidence shows that he and R. P. Richardson and J. J. Hibbits were trustees of the trust, and that the appellee here permitted the two cotrustees to manage and control in a measure the conduct of the business of the Utopia Confectionery Company; that the plaintiff did not know at the time it sold the goods anything about the existence of any trust estate or the filing of any declaration of trust, but believed that the three trustees were in fact a partnership. Fletcher, Cyclopedia Corporations, vol. 9, p. 10499, § 6095, says:

"Ordinarily, in the absence of special limitations the trustees bind themselves personally by their contracts with third persons. And this liability survives their death. The holder of a personal obligation incurred by them in the management of the trust property may sue them personally thereon, at law, and the judgment in such an action will run against them personally. 'A trustee is not an agent. An agent represents and acts for his principal, who may be either a natural or artificial person. A trustee may be defined generally as a person in whom some estate, interest, or power in or affecting property is vested for the benefit of another. When an agent contracts in the name of his principal, the principal contracts and is bound, but the agent is not. When a trustee contracts as such, unless he is bound no one is bound, for he has no principal. The trust estate cannot promise; the contract is therefore the personal undertaking of the trustee. * * * If a trustee contracting for the benefit of a trust wants to protect himself from individual liability on the contract, he must stipulate that he is not to be personally responsible, but that the other party is to look solely to the trust estate' "— quoting from Taylor v. Davis, 110 U. S. 330, 4 Sup. Ct. 147, 28 L. Ed. 163.

In Connally v. Lyons & Co., 82 Tex. 664, 18 S. W. 799, 27 Am.' St. Rep. 935, our Supreme Court held that although the plaintiffs knew that the defendant was conducting a mercantile business of which he had control as trustee for the benefit of persons mentioned in the conveyance creating the fund, and charged the goods to the trust, the trustee was nevertheless personally liable for the price of the goods. See, also, 239 Cyc. pp. 333 and 334, subd. C.

Therefore, in view of the authorities cited, we hold that under the articles of the association of the Utopia Confectionery Company, J. A. Robbins was personally liable for the debts incurred by him, or by his cotrustees when they were acting with his consent, as shown here, in the conduct and operation of the business of the Utopia Confectionery Company.

This conclusion renders it unnecessary for us to pass upon the assignment of appellants

to the action of the trial court in permitting Robbins after the plaintiffs and defendants had announced ready for trial and plaintiffs had introduced their testimony and had rested, and after said Robbins had been placed on the witness stand in his own behalf, and attempted to testify that he was not a partner in the Utopia Confectionery Company with J. J. Hibbits and R. P. Richardson, and plaintiffs objected thereto because said Robbins had not denied said partnership, under oath, to then file a denial of the partnership under oath. The bill of exceptions shows that the verification to the denial and disclaimer was inserted and added to said denial and disclaimer upon the same sheet of paper. If Robbins was liable personally by reason of being a trustee, it becomes immaterial whether he was liable as a partner or not, or whether the association was a pure trust or not.

We conclude that, under the facts, plaintiff made out a prima facie case of debt against the trustees personally, at any rate, and that the judgment below should be reversed and judgment here rendered against the defendant Robbins and his codefendant, Mrs. Mary Buckner, and it is so ordered.

[2] The majority, consisting of Chief Justice CONNER and Associate Justice DUNKLIN, are further of the opinion that both appellees, J. A. Robbins and Mrs. Mary Buckner, are liable under chapter 2, tit. 102, Rev. Statutes, relating to unincorporated joint-stock companies or associations, as construed by them in McCamey v. Hollister Oil Co. et al. (Tex. Civ. App.) 241 S. W. 689.