CHEROKEE VILLAGE et al., Appellants,

v.

Sonya Marie HENDERSON, et al., Appellees.

No. 16698.

Court of Civil Appeals of Texas, Houston (1st Dist.).

May 13, 1976.

Rehearing Denied July 1, 1976.

Fulbright & Jaworski, David J. Beck, Joe W. Redden, Jr., Houston, for appellants; Lancaster Smith, Dallas, of counsel.

Harold Lloyd, Houston, for appellees.

EVANS, Justice.

A venue case.

This action was brought by appellees in Harris County, Texas, to recover damages for personal injuries allegedly sustained by Sonya Marie, a minor, when she fell into a hole filled with scalding hot water on the premises of the Cherokee Village Apartments in Dallas, Texas. Named as defend-

ants were Cherokee Village, also known as Cherokee Village I, alleged to be a general partnership; certain individuals including J. E. Lieppman and Arthur S. Goldberg alleged to be general partners doing business as Cherokee Village; Arthur S. Goldberg, Trustee, as title holder of the Cherokee Village partnership property; Symbol, Inc., a Texas corporation, responsible for the maintenance and management of the apartments, and certain named employees of Symbol, Inc. Certain of the named defendants, appellants herein, filed pleas of privilege and pleas of forum non conveniens which were controverted by the appellees upon Subdivision 4, Article 1995, Tex.Rev. Civ.Stat.Ann. After a hearing the trial court overruled appellants' pleas and this appeal was perfected. We affirm.

In their first point of error appellants assert that appellees failed to prove a bona fide claim against J. E. Lieppman, the only defendant who resides in Harris County. Under this point they argue that on August 13, 1974, the date of the accident which is the basis of plaintiffs' action, a trust had been created by declaration dated December 3, 1970, under which legal title to the Cherokee Village Apartments was vested in Arthur S. Goldberg, Trustee, and that defendant J. E. Lieppman was a beneficiary of that trust. Appellants assert that title to the Cherokee Village property had previously been held by a partnership known as "Cherokee Village" under a partnership agreement dated May 1, 1970, as amended by purchase agreement dated November 25, 1970, but that such partnership ceased to exist in December, 1972, when the trust, through its trustee, Arthur S. Goldberg, purchased the interests of the original partners who withdrew from the partnership.

The declaration of trust dated December 3, 1970, is entitled: "BUY AND SELL AGREEMENT AND DECLARATION OF TRUST PERTAINING TO INTERESTS IN A PARTNERSHIP KNOWN AS CHEROKEE VILLAGE, ARTHUS S. GOLDBERG, TRUSTEE." It recites that the named parties, including J. E. Lieppman and Arthur S. Goldberg, are owners of undivided interests in a partnership known as Cherokee Village organized under the laws of the State of Texas and that said owners "have accepted title to their interests in said partnership in the name of Arthur S. Goldberg, Trustee"; that the parties' respective undivided interests in the partnership property are in the percentages set forth opposite their names, and that such persons are the beneficial owners and holders of said interests in the partnership, and that "said original partners shall complete construction of the apartments owned by Cherokee Village and shall continue to manage said apartments on behalf of the entire partnership"; that "Title has been taken in the name of Arthur S. Goldberg, Trustee," and that such trustee shall continue to serve in said capacity until his death, resignation or inability to serve, with provision for the designated successor trustee; that the trustee may from time to time receive distribution of partnership properties and incur expenses on behalf of the beneficiaries; that the trustee will not be the manager of the property held by the partnership but may in his discretion direct the managers of the partnership to make disbursements directly to the beneficiaries; that in accordance with their purchase agreement dated November 25, 1970, the trustee had agreed after January 3, 1971, to purchase an additional 45% of the partnership interest and that the beneficiaries agreed they would each pay their pro rata share of such sum; that the purpose of the agreement was to place the title of a partnership interest in Cherokee Village in a trustee and to set forth his duties and liabilities and the rights of the beneficiaries; that the instrument was not intended to create a partnership nor was it intended to actively carry on a trade or business. Under this provision it was further agreed that no party had the right to incur any liability or obligation on account of any other party except as specifically set forth and that the trustee had no power to borrow any money or incur any obligation on behalf of any other party unless such power was conferred by that instrument or by another written instrument executed by all the par-

ties. The parties further agreed that they would *"pay pro rata for their share of the capital investment and shall share profits and losses pro rata in accordance with the percentage of their interest as hereinbefore set forth."* (emphasis ours)

In December 1972 appellants, among other parties, executed an instrument purporting to be an amendment to the agreement of general partnership of Cherokee Village. Under that agreement the three original partners withdrew from the partnership and Article XI of the partnership agreement dated May 1, 1970, was amended so as to delete the names and percentages for the three original owners and substituted therefor was the following:

### PARTNERS' SHARE OF PROFITS

"The net profits or net losses of the partnership shall be distributable to and chargeable as the case may be to each of the partners in the following proportions:

| "Hartin-Henry Corp. | 18.00% |
|---|---|
| Murray Munves | 38.16% |
| Arthur S. Goldberg | 6.17% |
| James R. Alexander | 6.17% |
| Herman Ulevitch | 9.00% |
| Jerry Lurie | 9.00% |
| J. E. Lieppman | 4.50% |
| Charles S. Fromm | 9.00% |
| TOTAL | 100 % " |

This instrument further provided that except as specifically amended all of the terms, covenants, provisions and conditions contained in the original agreement of partnership, remained in full force and effect. On December 29, 1972, an assumed name certificate was executed, and filed for record on October 9, 1973, for the firm name of Cherokee Village which indicated the names of the individuals conducting such business to be as follows:

"Hartin-Henry Corp., General Partner
Murray Munves, General Partner
Arthur S. Goldberg, General Partner
James R. Alexander, General Partner
Herman Ulevitch, General Partner
Jerry Lurie, General Partner
J. E. Lieppman, General Partner
Charles S. Fromm, General Partner"

On June 15, 1973, Cherokee Village I Apartments entered into a "Management Agreement" with appellant, Symbol, Inc., whereby Symbol was appointed the exclusive agent for the management of the apartments. There was testimony that on April 13, 1974, the date appellee was injured, the employees of Symbol, Inc. had dug a hole by one of the apartment buildings to repair a leaking hot water line. At the end of the day the hole was left uncovered even though the leak had not been stopped and the workers knew that the hole would fill up with hot water when they left.

Appellee filed this suit on January 24, 1975. In October 1975 the appellants, who allegedly conducted business as Cherokee Village, executed and filed of record two instruments entitled "CERTIFICATE OF WITHDRAWAL FROM BUSINESS OPERATING UNDER ASSUMED NAME." These instruments recite that the previously filed assumed name certificate was erroneous and that:

"the true owner of Cherokee Village is Arthur S. Goldberg, Trustee. Accordingly, said persons now desire to correct the records to show the proper ownership and give notice that they are not the owners of said business and now desire and hereby do withdraw from said business, and hereby give notice that they are no longer connected with or interested in said business and they are nowise liable for any of the debts of the said business contracted from and after December 29, 1972."

Arthur S. Goldberg, Trustee, also executed and filed in October 1975 an assumed name certificate stating that Cherokee Village and Cherokee Village I is a business conducted by himself and that "said ownership was effective from and after December 29, 1972." At the hearing Goldberg testified that the previous filings were erroneous and that upon the withdrawal from the partnership of the three original partners in December 1972 he, as Trustee, had commenced trading as Cherokee Village.

Appellants concede that Cherokee Village was initially conducted as a partnership but

argue that the partnership ceased to exist in December 1972 when Arthur S. Goldberg purchased the interests of the three initial owners. They contend that a trust relationship is clearly evident from the terms of the declaration of trust dated December 3, 1970; that the terms and provisions of that instrument are clear and unambiguous and not subject to variance by parol, and that the testimony of Arthur S. Goldberg was uncontroverted and uncontradicted that the assumed name certificates indicating a partnership were erroneous. We cannot agree with these contentions.

The terms and provisions of the declaration of trust dated December 1970, considered together with the terms of the original partnership agreement dated May 1, 1970, as amended by the purchase agreement dated November 25, 1970, evidence an intention between the parties to carry on a business enterprise for mutual profit and with joint and several responsibility, according to their pro rata interests, for the debts incurred in the conduct of the business.

Notwithstanding the recitations in the declaration of trust instrument that it was not the intention of the parties to create a partnership nor to actively carry on a trade or business, there was evidence from which the trial court could have concluded that a continuation of the existing partnership was intended. The terms of the instrument reflect the intent of the parties that the original partnership agreement would remain in effect and that they would share pro rata in the capital investment and in the profits and losses of the enterprise. Two years after the execution of the declaration of trust, in December 1972, the original partnership agreement was amended "so as to provide for the withdrawal of certain partners from the partnership and to transfer the interests of the withdrawing partners to other *current* partners." By virtue of the December 1972 agreement, the original partnership agreement was expressly amended so as to provide that the "net profits or net losses of the partnership shall be distributable to and chargeable as the case may be" to the then current part-

ners. It is difficult to conceive how the parties could have more effectively provided for the continuation of their business association as a partnership under the earlier partnership agreement.

Article 6132b, the Texas Uniform Partnership Act, Section 6, defines a partnership as "an association of two or more persons to carry on as co-owners a business for profit." Section 7 of this Act sets forth certain criteria for determining the existence of a partnership under the Act. Under this section it is provided that with the exception of certain circumstances not here existent, the receipt by a person of a share of the profits of a business is prima facie evidence that he is a partner of the business. Article 6132a, Tex.Rev.Civ.Stat.Ann., the Texas Uniform Limited Partnership Act, sets forth the method by which limited partners, who do not wish to be bound by the obligations of the partnership, may carry on a business as a limited partnership. Article 6138A, Tex.Rev.Civ.Stat.Ann., sets forth the requirements for creation of a Real Estate Investment Trust. Section 8 of that Act provides for limited liability of the shareholders of such a trust. Appellants here do not contend that there was compliance with the requisites of either of these statutes.

■ Where two or more persons associate themselves as co-owners of a business for profit they become jointly and severally responsible for obligations incurred in the conduct of such business unless they have established, under some applicable statute, an association which the law recognizes as providing limited personal liability.

" 'Whatever may be the rule in other jurisdictions, it seems to be well settled by the decisions of our courts that, when two or more persons associate themselves together for the purpose of carrying on a business enterprise for their mutual profit, the persons so associated are jointly and severally responsible for the debts incurred in the conduct of such business unless such business association is organized as a limited partnership or a corpora-

tion under our statute providing for such organizations, or specially contracts with those with whom the association deals that only the funds and property of the association shall be held liable.'" [*Thompson v. Schmitt,* 115 Tex. 53, 274 S.W. 554, 560 (1925), quoting Chief Justice Pleasants in *Wells v. Mackay Telegraph-Cable Co.,* 239 S.W. 1006, (Tex.Civ. App.).]

The question of the existence of a partnership is one of fact. *Fuller v. Fuller,* 518 S.W.2d 250, 251 (Tex.Civ.App.—Beaumont 1974, writ ref'd n. r. e.). Subsequent to the execution of the declaration of trust instrument, the business association continued under the firm name "Cherokee Village" and assumed name certificates were executed and acknowledged by appellants in which they designated themselves general partners of the business. Partnership income tax returns with similar listings were filed in the name of Cherokee Village for the years 1972 and 1974. Thus, the evidence, including the testimony of Arthur S. Goldberg, an interested witness, raised a fact issue for the trial court's determination as to whether a partnership existed on the date of the accident.

Article 7425b–2, the Texas Trust Act, expressly provides that a "trust" within the meaning of the Act does not include "so-called 'Massachusetts Trusts' or similar business trusts . . ." In our opinion the trial court was at liberty to conclude from the evidence that the intent of the parties was to continue their partnership association in effect, notwithstanding the fact that legal title and certain management obligations were placed in the designated trustee for the association. The evidence supports the trial court's implied finding that the declaration of trust was merely a mechanism devised for the convenience of co-owners operating a business for profit. *Adkins v. Essler,* 38 S.W.2d 411 (Tex.Civ.App.—Austin 1931, no writ). The court was justified in deciding from all of the facts surrounding the declaration of trust that it was not the intent of the parties to create a "true trust" relationship within the meaning of the Texas Trust Act. See *Wells v. Mackay Telegraph-Cable Co.,* 239 S.W. 1001, 1008–10 (Tex.Civ.App.—Galveston, 1922, no writ) distinguishing *Connally v. Lyons,* 82 Tex. 664, 18 S.W. 799 (1891); 13 Am.Jur.2d, Business Trusts, Sections 10 and 11, pp. 385–387.

The trial court was not bound to accept as conclusive evidence of the parties' intent the written statement that a trust was intended nor their disclaimer of an intent to actively carry on the business as a partnership. *McCamey v. Hollister Oil Co.,* 241 S.W. 689 [Tex.Civ.App.—Fort Worth 1922, aff'd, 115 Tex. 49, 274 S.W. 562 (1925)]; *Means v. Limpia Royalties,* 115 S.W.2d 468 (Tex.Civ.App.—Fort Worth 1938, writ dism'd). There was evidence of probative force from which the court could have found that the parties had agreed to combine their efforts, as principals, to carry on a commercial enterprise in the firm name of Cherokee Village and to share in the profits and losses of the business. Upon such findings, the court properly decreed a partnership existed as to third parties. *Watson v. Edinburg Securities Co.,* 68 S.W.2d 644 (Tex.Civ.App.—San Antonio 1934, writ dism'd). We hold there was ample evidence before the court to support its implied finding that a partnership did exist at the time of the accident and that J. E. Lieppman as a member of the partnership was jointly and severally liable for the partnership's obligations. *Fuller v. Fuller,* supra; *Conrad v. Judson,* 465 S.W.2d 819 [Tex.Civ.App.—Dallas 1971, writ ref'd n. r. e., cert. denied 405 U.S. 1041, 92 S.Ct. 1312, 31 L.Ed.2d 582 (1972)].

We overrule appellants' first point of error.

In their second point of error appellants assert the trial court erred in overruling their pleas of forum non conveniens. Appellants concede that the doctrine of forum non conveniens has traditionally been invoked with respect to claims arising in another state or country where the parties

are before a court which, under the general jurisdiction statutes, has power to determine the type of controversy involved. See McDonald, Texas Civil Practice, § 1.07.5, p. 40; *Flaiz v. Moore,* 359 S.W.2d 872, 875 (Tex.1962). However, appellants argue that the doctrine should be applied here pursuant to the provisions of Rule 257, Texas Rules of Civil Procedure, which provides in part that a change of venue may be granted in civil cases upon application of either party " . . . (c) for other sufficient cause to be determined by the court." Appellants argue that the forum chosen by the plaintiff is extremely inconvenient to all of the parties and to all of the witnesses, and that the refusal of the trial court to order a change of venue constituted an abuse of its discretion. We overrule appellants' contention. An order denying a motion for change of venue predicated upon the provisions of Rule 257 is interlocutory and nonappealable. *Byer v. Dallas Power & Light Co.,* 290 S.W.2d 948, 950 (Tex.Civ. App.—Dallas 1956, no writ); *Long v. Humble Oil & Refining Co.,* 377 S.W.2d 844, 846 (Tex.Civ.App.—Texarkana 1964, writ ref'd 380 S.W.2d 554 (Tex.)). Where the parties are residents of this State the plaintiff has the choice of venue and the doctrine of forum non conveniens is not available to defeat the plaintiff's right. *Garrett v. Phillips Petroleum Co.,* 218 S.W.2d 238, 240, (Tex.Civ.App.—Amarillo 1949, writ dism'd); *National Life Co. v. Rice,* 140 Tex. 315, 167 S.W.2d 1021, 1024 (1943).

The judgment of the trial court is affirmed.