## J. C. WOOTERS v. J. B. SMITH.

(Case No. 1409.)

1. JUDGMENT.— A judgment against one of several joint contractors merges the contract, and thereby defeats an action thereon against the other parties thereto, at common law. But under the statute (R. S., 1256) a different rule prevails: a discontinuance may be entered as to a co-defendant not served without affecting his liability in a subsequent action; and the same rule applies to parties who might have been made parties, but were not joined in the suit.

2. SAME.— Only such parties as are liable as indorsers, guarantors or drawers of accepted bills are exempt from the operation of the rule above announced.

3. BOND.— See opinion for a bond exacted by an officer which was neither good as a statutory or common law bond.

4. BOND.— To sustain a bond as a common law bond taken by an officer under color of authority, it must appear in substance that the persons seeking its enforcement or those in privity with them agreed and consented to the contract evidenced thereby with the makers thereof.

5. RATIFICATION.— Parties intending to ratify a contract must ratify it as an entirety, and this must be done while the other party thereto is living. The minds of the parties must meet at the time of the ratification, but when ratified the contract will relate back.

6. BOND.— A bond given as a condition to be permitted to enjoy a right clearly given by law, demanded by an officer who has possession of property which he has seized under process, cannot be said to be a voluntary bond when it is more onerous than the statute prescribes.

7. SAME.— The taking of such a bond should be regarded, in the absence of explanatory facts, as evidence of the fact of a refusal to deliver the property unless the bond was given. Exacting the bond

under such circumstances would be as to the maker coercion and oppression, which would invalidate it as a common law bond.

8. LIMITATION.— See opinion for facts under which the bar of limitations applied to parties claiming rights under a bond executed as a replevin bond, and where possession of the property was resumed without reference to the bond.

APPEAL from Houston. Tried below before the Hon. J. R. Kennard.

*Nunn & Williams*, for appellants.

I. The court erred in sustaining defendants' third special exception to plaintiffs' petition, and holding that the bond or cause of action set up in plaintiffs' petition was merged in the former judgment, in suit of Wooters & Stone v. Whitten, and barred thereby.

II. The bond not being conditioned as required by the statute, the court, in case of Wooters & Stone v. Whitten, had not jurisdiction to render judgment on it, and no valid cause of action was merged in any judgment rendered on it. Haile v. Oliver, 52 Tex., 443; Janes v. Reynolds, 2 Tex., 257; Ayers v. Cayce, 10 Tex., 105.

III. The surety, Smith, being dead at the time of judgment, the right to establish the liability on the bond as a claim against his estate could not be merged in a judgment which refused to declare such liability.

IV. The petition and trial amendment presented a good cause of action, and the court erred in dismissing the suit on demurrer. As to bond being good common law obligation, see Johnson v. Erskine, 9 Tex., 10; Harris v. Shackelford, 6 Tex., 136; Speak v. U. S., 9 Cranch, 28; U. S. v. Linn, 15 Pet., 290; Sheppard v. Collins, 12 Iowa, 570; Morse v. Hodson, 5 Mass., 314; Barnes v. Webster, 16 Mo., 250; Waters v. Riley, 2 Harr. & Gill, 305; Drake on Attachment, sec. 327; 1 Par. on Con., p. 431; 2 id., p. 512; State v. Layton, 4 Harr. (Del.), 512; Justices v. Wynn, Dudley (Ga.), 22; Justices v. Smith, 2 J. J. Marsh., 473; Hoy v. Rogers, 4 T. B. Mon., 225; Cobb v. Curtis, 4

Littell, 235; Speck *v.* Commonwealth, 3 Watts & S. (Pa.), 324.

*J. R. Burnett,* for appellees.

STAYTON, ASSOCIATE JUSTICE.— This suit was brought by J. C. Wooters and Harrison Brown against B. M. Whitten and John B. Smith, administrator of estate of J. T. Smith, to recover the sum of $2,000.

The petition alleged that on the 27th day of October, 1873, a suit was pending in the district court of Houston county, in which J. C. Wooters and the surviving widow and children of Warren D. Stone were plaintiffs, against B. M. Whitten, to recover a certain tract of land; that in said cause, on the 28th of October, 1873, a writ of sequestration was sued out, and levied· upon the land in controversy, which at that time was held by Whitten under J. T. Smith; that Whitten and Smith were desirous that Whitten should retain possession of the land during the pendency of that suit, and that to enable him so to do, Whitten as principal, and J. T. Smith and Mrs. Johnson as sureties, on the 17th day of November, 1873, executed to the·sheriff who had levied the writ of sequestration a bond intended to operate as a replevin bond, for the sum of $3,000, payable to J. C. Wooters *et al.* (the names of the other payees not being given), conditioned that Whitten " would not remove the property out of the limits of Houston county during the pendency of said suit; that he will not make an improper use of the same, and that he will have said property, with the value of the hire, fruits or revenue thereof, forthcoming to abide the decision of the court, or that he will pay the value thereof, and of the hire, fruits or revenue in case the suit shall be decided against him."

It further alleged that said bond was executed for the use and benefit of the plaintiffs in that suit, and to secure to them " the value of the rents, profits, fruits and reve-

nues of said land;" and that the officer to whom the same was delivered, in consideration of the bond, acting for the plaintiffs, returned the property to Whitten; that the cause in which the bond was given was pending in the district court until the 18th day of March, 1880, at which time a judgment was rendered against Whitten and his sureties for the sum of $2,000, the value of the use and occupation of the land sequestrated for the years 1873, 1874 and 1875, which judgment was afterwards arrested as to the sureties Smith and Johnson, upon the ground of their decease before that date.

It further alleged that in the year 1875, in a suit pending in the circuit court of the United States (instituted before the suit in Houston county in which the bond was given), in which Warren Stone and E. H. Harris were plaintiffs, during the pendency of which Wooters purchased the interest of Harris in the land in controversy, judgment was recovered by the plaintiffs therein for the land in controversy,'and that in the spring of 1876 Wooters and the widow and heirs of Stone were put in possession of the land in controversy by process issued under that judgment; that the suit in Houston county was continued for the "purpose of recovering the value of the hire, fruits or revenue of said land, as by said bond stipulated for, during the years 1873, 1874 and 1875, and up to the spring of 1876;" that Whitten had possession of the land during those years, paying rent to J. T. Smith, and that such possession was permitted in consideration of the bond before referred to.

It was further alleged that no part of the $2,000 adjudged to Wooters and the Stones had ever been paid, and that Whitten and his sureties "did not have the value of the hire, fruits or revenues of said land forthcoming to abide the decision of the court, nor did he or they pay the value of such hire, fruits or revenues when said suit was decided against him, as they had bound themselves to do;

and they alleged that by the breach of the bond they were damaged in the sum of $2,000, the alleged value of the hire, fruits and revenues."

It further alleged that a claim was duly authenticated and presented to the administrator of Smith's estate on the 26th day of April, 1881, for the sum of $2,000, based on the bond, judgment and facts stated in the petition, and that the same was rejected; the claim as presented consisted of an account made out in favor of Wooters and the widow and children of Warren Stone, deceased, against the estate of J. T. Smith, and was as follows:

"April 13, 1881.

"Estate of John T. Smith, J. B. Smith, administrator, Dr., to J. C. Wooters, Malvina D. Stone, executrix of Warren Stone, deceased, William Garrett Stone, Warren Stone, Jr., Amanda E. Butts and her husband, John F. Butts.

"To value of fruits and revenues of part of John Durst grant of land in Houston county, known as Pickens place, formerly occupied by B. M. Whitten and sequestrated by said Wooters *et als.*, and replevied by said Whitten with said John T. Smith and William Johnson as sureties, and judgment was afterwards rendered against said Whitten for value of said fruits and revenues, and reference is made to the bond signed by said Whitten, Smith and Johnson and to certified copy of such judgment hereto attached and marked exhibit A and B, and made the basis of this claim; said bond of date 17th November, 1873, for the sum of $3,000, and copy of said judgment of date March 16, 1880, for $2,000; such fruits and revenues of value of $2,000." Copies of the bond and judgment were attached to the claim, which was sworn to by Wooters, and all of said papers were made a part of the petition.

The judgment made a part of the claim purported to be against Whitten as principal and Smith and Johnson

as sureties, which was the original judgment as rendered, and as it stood before the motion to arrest the same as to the sureties was made and sustained; it purported to be rendered upon the bond executed by Whitten and his sureties, and for the value of the use and occupation of the land.

The petition alleged that pending the suit the Stones transferred their interest in the claims therein asserted to W. A. Stewart, and that they thereafter prosecuted the suit for his benefit, by which he became the owner of the judgment bond and claim, and that since the presentation of the claim to the administrator of Smith's estate said Stewart had transferred all of his claim to plaintiff Brown.

The prayer was for the establishment of the claim against Smith's estate; for revival of judgment against Whitten, no execution having been issued against him within one year after the judgment was rendered; and if the condition of the bond could not be enforced, that they have "judgment for the sum of $3,000, the amount of the obligation, interest and cost."

To the petition the defendant Smith answered:

1st. By general demurrer.

2d. Special demurrer, based upon the fact that the suit was not brought in the name of the persons in whose name it was made out and presented, nor upon such a judgment as that presented to the administrator for allowance.

3d. Special demurrer, which set up the insufficiency of the bond either as a statutory or common law obligation, and the statute of limitations.

4th. Special demurrer, setting up the merger of the bond in the judgment rendered thereon against Whitten alone.

The special demurrer, which set up the merger of the bond, was sustained, and all others were overruled, to which the defendant excepted; after which plaintiffs

filed a trial amendment, in which they alleged that the
judgment rendered against Whitten and his sureties
on the bond was arrested as to the sureties on the 20th
of March, 1880; and that the judgment rendered as to
Whitten was left in full force, and that it had never been
paid; that no statutory judgment existed upon the bond,
and that plaintiff never sought to enforce the bond
otherwise than by this suit, believing that the same could
not be enforced by summary judgment as a statutory
bond; that Whitten was insolvent, and that neither he
nor his sureties were parties to the suit in the circuit
court of the United States under which possession of the
bond was obtained in the spring of 1876.

To this amendment the defendant filed a general and
special demurrer, the last of which set up the merger of
the bond by the judgment rendered against Whitten.

The demurrers were sustained and the cause was dis-
missed. The record does not show that Whitten was
served with citation in this cause, nor that he appeared.

The first assignment of error in substance is that the
court erred in sustaining the special demurrer which set
up the merger of the bond by judgment rendered against
Whitten.

It is a well recognized rule of the common law that a
judgment against one of several joint contractors merges
the contract, and thereby defeats an action thereon
against the other parties thereto. Mason v. Eldred et al.,
6 Wall., 234; Freeman on Judgments, 231.

If this be the rule in this state, the action of the
court below, in so far as it sustained the demurrer which
went to this point, is not error; for, although it is not
contended here that the bond made the basis of this suit
is such a statutory bond that a summary judgment might
have been taken thereon against the sureties of Whit-
ten — and that it is not such a bond is certainly true, — for
the plaintiffs in the cause of Wooters and Stone against

Whitten, upon the trial thereof, asked and obtained a judgment against Whitten upon that bond.

The sureties Smith and Johnson were not parties to that suit; the bond which they had executed not being such as was provided by the statute for replevying real estate, no judgment could have been rendered against them, and they certainly do not stand in a more favorable attitude than they would if the suit had been directly upon the bond and they had not been served. In such case a discontinuance as to them would not have been a bar to a subsequent suit against them upon the bond under the statute then and now in force. R. S., 1256.

As was said by Hemphill, C. J., in Forbes v. Davis, 18 Tex., 274, "This section recognizes the right of a plaintiff to enter a *nolle prosequi* as to defendants not served in all suits, no matter whether they be in tort or contract, or whether the obligation be joint and on which all the obligees must at common law be sued jointly, and there must be a joint judgment, or joint and several, and in which the suit, though joint, might have been several. All distinctions of this character, and the laws arising upon them, are disregarded and swept away by the statute; and the only test of the right of the plaintiff to discontinue as to some of the defendants is whether they have or have not been cited in conformity with law."

Such being the rule in cases in which defendants have been joined in the suit and not cited, the same must be applied in a case in which some parties who might have been made parties were not joined. The object of the statute was to abolish the common law rule, and such parties as are only liable as indorsers, guarantors, sureties, or drawers of accepted bills, are protected from the operation of the rule thus established by arts. 1257, 1258, 1259, R. S.

Similar statutes exist in several of the other states, and their effect has been held to abolish the common law rule

relied upon in this cause.   Freeman on Judgments, 43, 44, 233, and authorities cited.   It was error in the court to sustain the special demurrer now under consideration, and must lead to a reversal of the judgment, unless it appears that the sustaining of the general demurrer filed to plaintiffs' pleadings as amended was correct, or unless the court overruled special demurrers going to the foundation of the action which ought to have been sustained.

The remaining assignment of error by plaintiffs is that the court erred in sustaining exceptions to the trial amendment and dismissing the cause.

The appellee filed cross assignments of error, all of which are based upon the action of the court in overruling his special demurrers.   All of these assignments will be considered together, so far as necessary.

Did the court err in holding in effect that the bond sued upon, while not good as a statutory bond, was good as a common law obligation?   That the bond is not a good statutory bond, under the decisions of this court, is not an open question; and to be good as a common law bond, it must have all the requisites of such a bond, and be free from coercion or oppression under the color of office.

If a bond such as is required by the statute had been executed, the same would have been binding upon the parties thereto and upon those intended to be secured thereby, under and by force of the statute, which declares that such a bond may be given, and that the same shall be valid, notwithstanding it is wanting in the mutual assent of the parties.

In such case the officer taking the bond is authorized by the law to make the contract with the party executing the bond, and in such case he is made in a restricted sense the agent of the beneficiary; but this power conferred by the statute upon the officer is a power to do a certain thing in a certain way, and the officer takes no power thereunder by implication to do anything other

than the statute empowers him to do; hence, in taking the bond sued upon in this case, he was not in any legal sense the agent of the beneficiaries intended; they were not bound thereby, and could have presented to the officer a proper replevin bond, the defendant in the suit having failed so to do, and they would then have been entitled to the possession of the property, and the court upon proper application would have enforced the delivery; or they could have looked to the officer who had improperly parted with the possession for the reasonable value of the rents.

To sustain the bond as a common law bond, it must appear in substance that the persons now seeking to enforce the same, or those persons with whom they are in privity, agreed and consented to the contract evidenced thereby with the makers thereof. There is no such agreement set up in the pleadings in this case, and the case is made to stand nakedly upon the agreement, evidenced by the bond, made between the officer and the makers; this is not sufficient in a contract which the law has not empowered the officer to make.

Although the officer was not authorized to make the contract, the parties to be benefited thereby might have ratified the same at any time prior to the death of the sureties; but there is no averment in the pleadings that they ever did so. The strongest averment in that direction is that which alleges that, in consideration of the bond, the officer delivered the possession of the property to Whitten, and that he was permitted to keep the same for the years 1873, 1874 and 1875. These averments, taken with others, instead of evidencing the assent of the beneficiaries or their assignees to the contract evidenced by the bond, go far to repudiate any such assent.

The parties are presumed to have acted in accordance with their own views as to the binding force and effect of the bond upon them, and when viewed in the light

of their conduct as alleged, there seems to be but little doubt that neither the original beneficiaries, nor their assigns, regarded the bond as binding upon them nor assented thereto at any time prior to the death of the sureties, but upon the contrary, the averments of the petition show very clearly that they repudiated it.

Parties intending to ratify and adopt a contract must ratify it as an entirety (Story on Contracts, 164; 1 Wait's Actions, 233, and authorities cited), and this must be done while the other party thereto is living; for it only becomes the contract of the parties, if not originally binding, when so ratified. The minds of the parties must meet at the time of the ratification; but when ratified the contract will relate back.

The bond, if valid, evidenced that Whitten was entitled to hold possession of the land until the termination of the suit in which it was given; it was executed November 17, 1873, and the suit did not terminate until the 18th of November, 1880; yet in the spring of 1876, under the judgment rendered in the circuit court of the United States, to which neither Whitten nor his sureties were parties, he, at the instance of the plaintiffs, or those under whom they claim, was deprived of the possession of the land to which he would have been entitled under the bond, had it been recognized as a binding agreement between them.

No stronger evidence of a repudiation of the bond could be averred than that found in the record, which shows that in so far as the contract imposed obligations upon the plaintiffs it was disregarded.

A party cannot, as it has been well said, "blow hot and cold;" he must adopt the whole transaction or refuse the whole; he must assume the obligations imposed or he cannot claim the benefits.

This rule is universal, and commends itself to every fair mind. If Whitten had been permitted to have the full

benefit of the contract, the consent of the appellants to the contract upon proper averment might be presumed, and it is possible that in such case neither the sureties nor principal upon the bond would be heard to deny its validity.

Was the bond free from coercion under color of office? It was invalid as a statutory bond because not the bond prescribed by law, and more onerous than the law required. Has it such elements of coercion or oppression as require it to be pronounced invalid as a common law bond? If the property in controversy in the suit in which the bond was given belonged to the plaintiffs, it was their right to have the possession thereof. This right, however, as are all rights not natural, had a limitation imposed upon it by the law of the land, which in such imposition conferred upon the adverse party a right as clear, legal and perfect as is any other right not natural or absolute.

The statute provides that, when suit is brought for land, it may be taken from the possession of a defendant by a writ of sequestration upon certain prescribed terms; but it further gives to a defendant the legal right to have the possession of the land pending litigation, if he will execute with sureties a bond, the conditions of which are fully set forth in plain words.

It would seem that a bond given as a condition to be permitted to enjoy a right clearly given by law, demanded by an officer who has possession of property which he has seized under process, ought not to be said to be a voluntary bond when more onerous than prescribed by law.

While an officer so holding property may not have taken bond under such state of facts as would make the same void upon the ground of duress, if between parties contracting in their own right, yet the simple fact that an officer receives a bond more onerous than the law pre-

scribes ought to be taken, in the absence of an averment to the contrary, is evidence of the fact that he refused to deliver the property unless the bond given was executed. The taking of such a bond under such circumstances would be as to the maker coercion and oppression.

Parties contracting in their own right may make such terms as they please, so they are not contrary to law; but an officer in the discharge of his official duties, who denies a legal right, even though the same be but a right given by statute, unless the party seeking the same will do more than the law requires, is a coercer and oppressor, through whose contracts no one ought to be permitted to claim rights.

In the case of Johnson v. Erskine, 9 Tex., 10, the principle involved in this case was considered, and it was held that a bond given as a prerequisite to the pursuit of an occupation which the maker had the right to pursue without such bond, was invalid either as a statutory or common law bond. It will be hard to draw the distinction between such a case and one in which a bond more onerous than the law demands is required as a prerequisite to the enjoyment of a legal right.

Adopting the language of that decision as fully as we can in its application to this case, we may say that under the statute the makers of the bond were neither legally nor morally bound to give the bond which was executed as a prerequisite to the possession of the property in controversy; and as they were required to give the bond in order to have the possession of the property, the giving of it cannot well be said to have been voluntary.

As was said in that case, "unless we felt very clear that the bond was valid as a voluntary common law bond, sound policy would forbid our sustaining it as such. Any latitude allowed to officers whose duty it is to take bonds, in departing from the terms required by the statute in the structure and framing the bond, will be

an encouragement to a further disregard and inattention to its requisitions."

The statute of limitations was interposed as a defense, and we are of the opinion should have been sustained, even if the bond had been originally good. The appellants exercised their right to have possession of the bond in the spring of 1876, under the judgment rendered in the circuit court of the United States, thus terminating Whitten's possession of the land; they certainly thereby annulled the bond if it ever had a legal existence, and would have been driven to a suit against Whitten and such of his defendants as may have been shown to be liable, based upon the possession of the land, without reference to the bond.

More than five years passed after Whitten was dispossessed before the present suit was brought, and if the structure of the petition had been sufficient to sustain such a suit, the cause of action was certainly barred. It will not be necessary under the view we take of the case to examine the other questions raised by the demurrers.

Although the court erred in sustaining the special demurrer that was sustained, yet as it appears there were other exceptions which should have been sustained (if, in fact, the general demurrer filed after the amended petition was not sustained), which went to the foundation of the action, and which could not be obviated by amendment, the judgment must be affirmed.

AFFIRMED.

[Opinion delivered February 3, 1882.]