**WELLS et al. v. MACKAY TELEGRAPH-CABLE CO. (No. 8082.)***

(Court of Civil Appeals of Texas. Galveston. Dec. 17, 1921. On Motion for Additional Findings and to Certify, Feb. 23, 1922.)

1. Associations ⬦20(2)—Some members of unincorporated association may be sued on the association's debt without making all members defendants.

An action could be commenced against some of the members of an unincorporated association who were liable to plaintiff as partners or as principals for debts incurred by their agents, the trustees and officers of the association, without joining as defendants all of the members who were so liable; the common-law rule requiring a plaintiff in a suit upon a joint or a joint and several contract to sue one or all of the joint obligors having been abolished by Vernon's Sayles' Ann. Civ. St. 1914, arts. 1842, 1896.

2. Associations ⬦16—Members held jointly and severally liable for debts incurred by trustees.

Members of unincorporated association, not constituting a limited partnership, but organized under declaration of trust placing the management of the business in the hands of trustees, held jointly and severally liable for debts incurred by trustees in the conduct of such business under Vernon's Sayles' Ann. Civ. St. 1914, arts. 6149, 6152, 6153, though under such declaration of trust they had no direct control or authority over the trustees or their management of the business.

3. Associations ⬦16—Members held jointly and severally liable for debts incurred in the conduct of its business.

Persons who associate themselves together for the purpose of carrying on a business enterprise for their mutual profit are jointly and severally responsible for the debts incurred in the conduct of such business unless the association is organized as a limited partnership or a corporation, or specially contracts with those dealing with the association that only the funds and property of the association shall be liable under Vernon's Sayles' Ann. Civ. St. 1914, arts. 6149, 6152, 6153.

Appeal from Harris County Court; John W. Lewis, Judge.

Suit by the Mackay Telegraph-Cable Company against L. W. Wells and others. Judgment for plaintiff, and defendants appeal. Affirmed. Motion to certify overruled.

Stevens & Stevens, of Houston, Smith & Crawford, of Beaumont, and W. E. Masterson, of New York City, for appellants.

Andrews, Streetman, Logue & Mobley, W. L. Cook, M. E. Kurth, and E. J. Fountain, Jr., all of Houston, for appellee.

PLEASANTS, C. J. This suit was brought by appellee against L. W. Wells and eight others, all of whom are shareholders in the Noble Oil & Refining Company, to recover the sum of $585 due the appellee by said company for services rendered in the transmission of telegraphic messages for the company.

By its first amended original petition upon which the cause was tried plaintiff alleged in substance that prior to July, 1918, the defendants had associated themselves together in an organization or association known as the Noble Oil & Refining Company, there being a number of other persons in like manner members of said organization or association not made parties to the suit, and that each member of said association received individual certificates issued by the duly authorized agent and representative of the association evidencing their respective memberships therein. The petition further alleged that, having become members of said organization, and under and by virtue of a declaration of trust, defendants, and each of them, jointly and severally, constituted T. J. Noble, W. A. Kuhleman, and F. Hildebrand as each of their agents in the conduct and management of the affairs of said enterprise, as is more fully shown by copies of two declarations of trust attached as exhibits to the petition.

Plaintiff further alleged in the alternative that, if it be mistaken in its allegation that the defendants became members of said organization, and if the defendants were not principals with said agents acting as above alleged, then, and in that event the defendants were partners doing business under the said trade-name above set forth.

Defendants answered by a plea in abatement, the nature of which will be hereinafter shown, and by general denial and special denial under oath of any partnership relation or liability. The plea in abatement was overruled, and upon a trial by a jury the court instructed the jury to return a verdict for the plaintiff, and, such verdict being returned, judgment was rendered accordingly.

The two instruments under which the Noble Oil & Refining Company, was organized and its business carried on are attached as exhibits to plaintiff's petition. The first of these instruments, which was executed on the 22d day of May, 1917, by T. J. Noble, W. E. Scott, and W. A. Kuhleman, in its first paragraph recites that T. J. Noble is the owner of oil leases, options, etc., and desires to convey such interests to W. E. Scott, W. A. Kuhleman, and T. J. Noble as trustees, and that they should employ a manager of said properties thereafter acquired, and agrees to divide the beneficial interest therein into shares.

The second paragraph is a declaration that the three named men will hold such prop-

erty for the benefit of the holders of these shares of stock.

The third paragraph names this association as "The Noble Oil & Refining Company."

The fourth paragraph provides that the trustees named shall hold office until the first annual meeting of the shareholders on June 1, 1918.

Paragraph 5 reads as follows:

"The shareholders shall, at each annual meeting, or adjournment thereof, elect trustees sufficient in number to take the place of those trustees whose terms have expired by limitation, said newly elected trustees to serve ·for the term of three years next ensuing. In case of the death, resignation, or inability to act of any of said trustees, the remaining trustees shall fill any vacancies for the unexpired term. As soon as any trustees selected by the shareholders or by the remaining trustees to fill a vacancy have accepted this trust, the trust estate shall vest in the new trustees or trustee, together with the continuing trustees, without any further act or conveyance."

Paragraph 6 provides for the acceptance by new trustees of the trust given them by a written instrument.

Paragraph 7 authorizes the trustees to engage in the business of acquiring, buying, selling, and developing oil lands, and refining oil and in any business similar in character thereto ·which the trustees may deem expedient.

Paragraph 8 gives the trustees the legal title to all property and control thereof.

Paragraph 9 reads as follows:

"The trustees shall have authority to adopt and use a common seal; to make all such contracts as they may deem expedient in the conduct of the business of the trust; from time to time to release, sell, exchange, or otherwise dispose of, at public or private sale, any· or all of the trust property, whether real or personal, for such prices either in cash or the stocks, shares or securities of other corporations, trusts or associations, and upon such terms as to credit or otherwise as they may deem expedient; to confer by way of substitution, such power and authority on' the president, treasurer, secretary and executive committee, and other officers and agents appointed by them, as they may deem expedient; to acquire, own, sell, or otherwise dispose of such real or personal property as they may deem expedient to in connection with the purposes of the trust; to collect, sue for, receive, and receipt for all sums of money at any time becoming due to said trust; to employ counsel and to begin, prosecute, defend, and settle suits at law, in equity, or otherwise, and to compromise or refer to arbitration any claim in favor of or against the trust; and in general to·do all such ·matters and things as in their judgment will promote or advance the business which they are authorized to carry on, although such matters and things may be neither specifically authorized nor incidental to any. matters or things specifically authorized. In addition to the powers herein granted the trustees shall have all powers with reference to the conduct of the business and management of the property of the trust which are possessed by directors of a manufacturing corporation under the laws of the state of Texas."

The tenth paragraph provides that, as far. as strangers to the trust are concerned, a resolution of the trustees authorizing a particular act to be done shall be conclusive evidence in favor of strangers that such act is within the power of the trustee.

Paragraph 11 provides for meeting of trustees.

Paragraph 12 gives the trustees power to make, adopt, amend, or repeal such by-laws, rules, and regulations not inconsistent with the terms of the instrument.

Paragraph 13 gives the trustees power to elect annually from their number officers of such association, and then the following:

"The president, treasurer, and secretary shall have the authority and perform the duties usually incident to those officers in the case of corporations, so far as applicable thereto, and shall have such other authority and perform such other duties as may from time to time be determined by the trustees."

The sixteenth and seventeenth paragraphs provide for the acquisition of shares by trustees and the amount of the beneficial interest ·and number of shares.

The eighteenth and nineteenth paragraphs provide that certificates of stock may be issued and that such shall be transferable.

The twentieth paragraph provides for dividends to be paid.

Paragraphs 22 to 29, inclusive, read as follows:

"(22) Annual meetings for the election of trustees and for the transaction of other business shall be held in Houston, Texas, on the first Tuesday of April in each year, beginning with the year 1917, of which meetings notice shall be given by the secretary by mailing such notice to each shareholder at his registered address at-least ten days before said meeting. Special meetings of the shareholders may be called at any time upon seven days· notice given as above stated, when ordered by the president or trustee.

"(23) At all meetings of the shareholders, each holder of shares shall be entitled to one vote for each share held by him; and any shareholder may vote by proxy.

"(24) Shares hereunder shall be personal property, giving only the rights of this instrument, and in the certificates thereof, specifically set forth. The death of a shareholder during the continuance of this trust shall not operate to determine this trust, nor shall it entitle the representatives of the deceased shareholder to an accounting or to take any action in the courts or elsewhere against the trustees; but the executors, administrators or assigns of any deceased shareholder shall succeed to the rights of said decedent under this trust, upon the surrender of the certificates of shares owned by them. The ownership of shares hereunder shall not entitle the share-· holder to any title in or to the trust property

whatsoever or right to call for a partition or division of the same for an accounting, and no shareholder shall have any other or further rights than the rights of a stockholder in a corporation so far as the same may be applicable.

"(25) The trustees shall have no power to bind the shareholders personally, or to call upon them for the payment of any sum of money or any assessment whatever other than such sums as they may at any time personally agree to pay by way of subscription to new shares or otherwise. All persons or corporations extending credit to, contracting with, or having any claim against the trustees shall look only to the funds and property of the trust for the payment of any debt, damage, judgment or decree, or of any money that may otherwise become due or payable to them from the trustees, so that neither the trustees, shareholders, nor officers. present or future, shall be personally liable therefor.

"(26) In every written order, contract or obligation, which the trustees or officers shall give, authorize or enter into, it shall be the duty of the trustee and officers to stipulate, or cause to be stipulated, that neither the trustees, officers nor shareholders shall be held to any personal liability under or by reason of such order, contract or obligation.

"(27) It is further expressly agreed that in case any officer, trustee or shareholder shall at any time for any reason be held to or be under any personal liability as such trustee, officer or shareholder, not due to his acts in bad faith, then such trustee, officer or shareholder shall be held harmless and indemnified out of the trust estate from and of all loss, cost, damage or expense by reason of such liability; and if at any time the trust estate shall be insufficient to provide for such indemnity and to satisfy all liabilities of and claims upon it, then the trust estate shall, in preference and priority over any and all other claims or liens whatsoever except mortgages, and except as otherwise expressly provided by law, be applied first to the indemnification of the trustee from any loss, cost, damage or expense in connection with any personal liability which they may be under or have incurred except as aforesaid; next, to the indemnification in like manner of the shareholders.

"(28) This trust shall continue for the term of twenty years after the death of the last survivor of the persons whose names are signed thereto, at which time the then trustees shall proceed to wind up its affairs, liquidate its assets, and distribute the same among the holders of the shares; provided, however, that if prior to the expiration of said period the holders of at least two-thirds of the shares then outstanding shall, at a meeting called for that purpose, vote to terminate or continue this trust, then said trust shall either forthwith terminate or continue in existence for such further period as may then be determined. For the purpose of winding up their affairs and liquidating this trust the then trustees shall continue in office until such duties have been fully performed.

"(29) This agreement and declaration of trust may be amended or altered in any particular whatsoever, except as regards the exemption from personal liability of the trustees, officers and shareholders at any annual or special meeting of the shareholders with the consent of at least a majority of the shares outstanding, provided notice of the proposed amendment or alteration shall have been given in the call for the meeting; and in case of such alteration or amendment the same shall be attached to and made a part of this agreement and a copy thereof, with a certificate of the secretary as to its adoption shall be filed with the trust company or person at that time having the custody of the duplicate original of this instrument."

About the 1st day of June, 1918, the shareholders of the Noble Oil & Refining Company, at a meeting held for that purpose, passed a resolution dissolving or rescinding the declaration of trust before set out, and in lieu thereof adopted a second declaration of trust prepared by a committee appointed by the shareholders. This second trust agreement contains the following provisions:

"T. J. Noble et al. to Noble Oil & Refining Co.

"Declaration of Trust.

"Articles of Organization of Noble Oil & Refining Company.

"This agreement and articles of organization made this 1st day of June, A. D. 1918, by T. J. Noble, W. A. Kuhleman, and F. Hildebrand, who together with their successors are designated as trustees and collectively shall be known and designated as the Noble Oil & Refining Company, witnesseth:

"That the said parties have procured and caused to be transferred to the said Noble Oil & Refining Company those two certain patents Nos. 1,259,721 and 1,230,666 known as the Carden Noble Oil Well Cleaner, a device for cleaning oil wells, and also certain leases and contracts for developing oil and cleaning wells in the fields of the state of Texas, and Louisiana, heretofore held by the Noble Oil & Refining Company, which has been dissolved but now held by the parties hereto, and also all assets, books, accounts, moneys and choses in action of whatever sort or nature formerly held by the said Noble Oil & Refining Company under the organization which has previously been dissolved, but now held by the parties hereto.

"The trustee for the purpose of defining the interest of the various parties interested in the said property conveyed and in full payment and consideration of the said conveyance to them, under the designation of the Noble Oil & Refining Company as aforesaid, have issued negotiable certificates of shares as follows: [Here follows a list of all of the 400 or 500 shareholders with the number of shares issued to each of them.]

"Each certificate showing par value of said shares to be fixed at $10 and issued respectively as aforesaid, as fully paid by the purchase of said conveyance aforesaid and forever nonassessable.

"Now, therefore, the trustees hereby declare that they will hold the said rights, properties, and interests transferred to them as well as all other such which they may acquire as trustees, together with the proceeds thereof in

trust, to manage and dispose of the same for the benefit of the holders, from time to time in the certificates of shares issued thereunder as expressed in the said certificates and in the manner and subject to the stipulations herein contained, to wit:

"The trustees in their collective capacity shall be designated, as far as practicable, as the Noble Oil & Refining Company, and under that name shall, so far as practicable, conduct all business and execute all instruments in writing, in and about the performance of said trust.

"The first trustees shall be T. J. Noble, W. A. Kuhleman and F. Hildebrand. The trustees shall hold the legal title to all the property at any time belonging to the said organization, and shall have and exercise the exclusive care and management of the same and shall have the right and power to designate their successors. They shall adopt and use a common seal. They shall have power to vote as herein provided, in person or by proxy, upon all shares of stock of any kind belonging to the trust, and to collect, receive and receipt for the dividends thereon, and they may contract with each and any for the control of organizations or corporations, in respect to all matters relating thereto, to collect, sue for, receive and receipt for all sums of money due to said trust. To employ counsel, to being, prosecute, defend or settle suits at law, in equity or otherwise, and to compromise or refer to arbitration any claim in favor of or against the trust. They may also, with the consent of two-thirds of their number given at a meeting called for that purpose, but not otherwise, exchange upon such terms as said two-thirds of the said trustees may agree upon, any stock or securities held by them in any corporation or company, and may take the stock or securities of any other corporation or company or its property, by consolidation or otherwise, may loan money to any corporation or company of which they may own a majority of the capital stock, and may subscribe for, or acquire additional stock or securities, or the obligations of such corporation or company and with such consent, but not otherwise, may subscribe for, purchase or otherwise acquire shares in the capital stock of any corporation or company. It is the declared purpose of the organizers by these articles of agreement to organize a common-law organization, and not a partnership. So far as strangers to this trust are concerned, a resolution of the trustees authorizing a particular act to be done shall be conclusive evidence in favor of such strangers that such act is within the power of the trustees, and no purchaser from the trustees shall be bound to see to the application of the purchase money or other consideration paid or delivered by or for such purchaser to or for such trustees.

"Stated meetings of the trustees shall be held at least every three months, and other meetings shall be held from time to time upon the call of two of the trustees. A majority of the said trustees to constitute a quorum, and the concurrence of all the trustees shall not be necessary to the validity of any action done by them, but the wish of the majority present, and expressed by voting, shall be conclusive evidence, except as hereinbefore specifically provided.

"The trustees may make, adopt, amend or repeal such by-laws, rules and regulations not inconsistent herewith as they may deem necessary for the conduct of their business or for the government of themselves, their agents, servants or representatives.

"The trustees shall annually select from among their number a president, vice president and secretary-treasurer, and they shall have the power and authority to appoint in writing such other officers, agents or attorneys as they may from time to time deem necessary for the conduct of their business, and shall likewise have authority to elect temporary officers to serve during the absence or disability of the regular officers. The president, secretary and treasurer, shall have power to do and perform the duties usually incident to these offices in the case of a corporation, so far as applicable thereto, and shall have such other authority and perform such other duties as may, from time to time be determined by the trustees.

"The trustees shall fix the compensation of any and all officers and agents whom they may appoint, and are likewise to pay themselves such compensation for their services as is deemed reasonable.

"Shares hereunder shall be of the par value of $10 each and shall all be common shares, and participate equally in the earnings and in the property upon the dissolution of this trust, and as evidence of the ownership of such shares, the trustees shall cause to be issued to each shareholder a negotiable certificate or certificates which shall be in the form following:

" 'No. ————. Organized under the Common Law. ——— Shares.

" 'This is to certify that ——— is the holder of ——— shares of fully paid and nonassessable shares of the par value of ten ($10.00) dollars each, in the common capital of the Noble Oil & Refining Company, of Houston, Texas, subject to the declaration of trust in favor of said company dated the ——— day of ———, 191—, in favor of said organization, and duly recorded in volume ———, page ———, to ———, in the office of the recorder of deeds of Harris county, state of Texas, and transferable only upon the books of the company by holder hereof, in person or by attorney, upon surrender of this certificate properly indorsed.

" 'In witness whereof said company has caused this certificate to be signed by its duly authorized officers, and so sealed with the seal of the company, this ——— day of ———, 191—. Attest: ———, Secretary. ———, President. Shares ———.'

"In addition to the shares to be originally issued to the subscribers, as hereinbefore provided, the trustees may issue and sell at public or private sale, upon such terms and for such price as they shall deem best, such additional shares not to exceed in the aggregate $1,500,-000 par value as may be necessary to procure moneys to fully maintain and operate this organization, under the terms of the trust herein imposed.

"The said trustees in pursuance of the business and interests of said trust may buy, sell, lease or acquire by concession grant, or otherwise, coal, oil, gas and all kinds of mineral and mineral lands, or any right, interest, title

or estate therein, and mine and market any mineral or minerals, coal, oil or gas that may be found on such lands; may buy, sell and own real estate mineral, oil and gas leases, rights or concessions; may buy, sell, own, lease, construct and operate mills, mines, oil wells, gas wells, oil and gas reservoirs, oil refineries, oil and gas pipe lines, factories, warehouses, dwelling houses, or other buildings and adjuncts thereto and improvements to the same, as may seem advantageous to the best interests of this trust and the shareholders therein.

"In case of the loss or destruction of any certificates of shares issued by the trustees they shall issue new certificates for the shares in the place of those lost or destroyed, upon proof being made of such loss. In short, the trustees shall have full power to do anything and anything that a common-law organization is empowered to do. The fiscal year of the trustees shall end on the first Monday of December of each year. Annual meetings for the transaction of any business that may come before the meeting shall be held in Houston, Harris county, Texas, or as may be designated by the trustees, on the first Monday in June each year, beginning with the year 1919, of which meeting notice may be given by the secretary by mail to each shareholder at his registered address, as hereinafter provided.

"Meeting of the shareholders may be called at any time upon a ten days' notice to those shareholders whose residence are within the state of Texas and twenty days' notice to those shareholders who are without the state of Texas. Said special meeting may be called for the purpose of submitting any and all business of the organization to the said shareholders, for the purpose of dissolution or for such other reasonable and business reasons as the trustees may deem proper and necessary in the conduct, management and maintenance of the business and purposes herein proposed.

"The death of a shareholder or trustee during the continuance of this trust shall not operate to determine the trust, nor shall it entitle the representatives of the deceased shareholder or trustee to an accounting, or to take action in the courts or elsewhere against the trustee, but the executors, administrators or assigns of any deceased shareholder shall succeed to the rights of said decedent under this trust, upon surrender of the certificates for the shares owned by him. The ownership of shares hereunder shall not entitle the shareholder to any title in the trust property except to his pro rata share upon the dissolution of this trust, nor shall he be entitled to have any right to call for a partition or division of the same, or for any accounting in any court.

"The trustees shall have no power to bind the shareholders personally, and the subscribers and their assigns and all persons, firms, or corporations, extending credit to, contracted with, or having any claims against the trustees, shall look only to the funds and property of the trust for the payment under such contract, obligation or claims, or for the payment of any debt, damage, judgment, decree or money that may otherwise become due or payable to them from the trustees so that neither the trustees nor the shareholders, present or future, shall be liable therefor. The bank account of the trustees known and designated as the Noble Oil & Refining Company shall be kept at such bank as the said trustees shall agree upon, and checks thereupon shall be signed by the president or by the treasurer and by no other persons.

"A written notice signed by the trustees shall be filed with the bank showing the appointment of such treasurer and president. This trust shall not continue, in any event, longer than twenty (20) years, at which time the board of trustees shall proceed to wind up the affairs, liquidate its assets and distribute the same among the holders of the shares, according to the number of shares held by them respectively. The then board of trustees shall continue in office until such duties have been fully performed. This agreement and declaration of trust may be altered or amended by the trustees except as regards the liability of trustees or shareholders.

"In witness whereof the said T. J. Noble, W. A. Kuhleman and F. Hildebrand, the trustees hereinbefore mentioned, have set their hands and seal as such in token of their assent and acceptance of the trust herein specified for themselves and their successors.

"T. J. Noble
"W. A. Kuhleman,
"F. Hildebrand."

The appellants were admitted to be holders of shares of the Noble Oil & Refining Company issued under the trust agreements before set out.

It was shown that the trustees in both the declarations of trust were dead or insolvent, and the business and estate of the Noble Oil & Refining Company was insolvent. The amount claimed by the plaintiff was shown to be justly due it by the Noble Oil & Refining Company.

The plea in abatement before mentioned was predicated upon the contention that, plaintiff's cause of action being based upon the claim that all of the shareholders of the Noble Oil & Refining Company were liable to plaintiff as partners or as principals for debts incurred by their agents, the trustees and officers of the company, in carrying on the business of the company, in order to maintain its suit plaintiff was required to make all of the partners or principals parties to the suit.

The plea, which was filed in due order of pleading, contained all the allegations of fact necessary to raise the questions presented by appellants' contention.

[1] We do not think the trial court erred in overruling this plea. The common-law rule which required a plaintiff, in suit upon a joint or a joint and several contract, to either sue one or all of the joint obligors, was never recognized in our practice, and has been abolished in this state by statute. Articles 1842 and 1896, Vernon's Sayles' Civil Statutes; Cook v. Phillips, 18 Tex. 31; Glasscock v. Hamilton, 62 Tex. 169; Miller v. Sullivan, 89 Tex. 480, 35 S. W. 362; Wooters v. Smith, 56 Tex. 198.

In the case of Miller v. Sullivan, supra,

in which the question for decision was the right of the plaintiff to dismiss the suit as to one of several defendants and continue its prosecution against other defendants, the court says:

"The contract which was sued upon in this case as shown by the opinion accompanying the (certified) question is a joint promise on the part of all the defendants. Could the plaintiff have sued one or more of them without suing all? Was Mrs. Beeson, now Mrs. Cross, a necessary party to the suit? At common law all joint promisors had to be sued, and she was a necessary party to the suit. Not so under our statutes, as we construe them."

This opinion discusses the question fully, and cites the authorities above cited, and concludes that, when article 1842 of the statute above cited "is read in the light of the decisions rendered previous to its passage, we think that it becomes clear that it was one of its purposes to declare explicitly that upon all joint contracts either one or more of the joint contractors might be sued without joining all." This opinion seems to us to be conclusive of the question raised by appellants' plea in abatement, and the assignment complaining of the ruling of the trial court on the plea cannot be sustained.

[2] The other and most important question presented by this appeal is whether, under the trust agreement or so-called declaration of trust under which the Noble Oil & Refining Company was created and its business conducted, the shareholders of the company became liable for debts incurred by the trustees in carrying on the business of the company. We think this question should be answered in the affirmative.

[3] Whatever may be the rule in other jurisdictions, it seems to be well settled by the decisions of our courts that, when two or more persons associate themselves together for the purpose of carrying on a business enterprise for their mutual profit, the persons so associated are jointly and severally responsible for the debts incurred in the conduct of such business unless such business association is organized as a limited partnership or a corporation under our statute providing for such organizations, or specially contracts with those with whom the association deals that only the funds and property of the association shall be held liable. This precise question was considered by this court in the case of Industrial Lumber Co. v. Texas Pineland Ass'n, 31 Tex. Civ. App. 375, 72 S. W. 875. In the opinion in that case it is said:

"It appears from plaintiff's allegations that the defendant association is a joint-stock company or voluntary unincorporated association, composed of a great number of persons whose interests are evidenced by certificates of stock, and which transacted its business and managed its affairs through named trustees with prescribed powers. Such concerns are uniformly held in the United States to be partnerships, subject to be sued as such, and governed by the laws fixing partnership responsibility. 22 Enc. of Law (2d Ed.) p. 637; 1 Cook on Stock and Stockholders, § 508; 1 Thompson on Corp. § 14, p. 16. They are distinguishable from 'partnerships,' as that term is ordinarily used, only in the respect that the death or withdrawal of one or more members does not effect a dissolution, and that the stock can be bought and sold without affecting the integrity of the concern. In these respects they partake of the nature of corporations, but these peculiar characteristics do not affect the nature or extent of the individual liability as to third parties.

"The agreement among the members, or between themselves and the trustees appointed to manage the affairs of the concern, that no personal liability should rest upon the members, would not have the purposed effect, any more than such an agreement between the members of an ordinary partnership would accomplish that end. 22 A. & E. Ency. Law, pp. 143, 173."

In the case cited the court holds that the special contract shown exempting the shareholders of the association from personal liability was valid, and further held:

"If, however, we are in error in holding that the contract of personal exemption was valid, then plaintiff had the right, under appropriate pleading, to a personal judgment against each member of the association, or such members as he could identify and serve with process, with right to general execution against them, and execution against the firm property as to all."

There is no case in this state which announces a doctrine contrary to our holding in the Pineland Case.

In the cases of Brigham v. Graham (Tex. Civ. App.) 220 S. W. 105, and Davis v. Huggins (Tex. Civ. App.) 225 S. W. 73, cited by appellant as holding contrary to the Pineland Case, the question of liability to third persons of the shareholders under a trust declaration similar to the declaration in this case was not under consideration. These cases were both suits between shareholders, and the questions of necessary parties and the appointment of a receiver were the only questions involved.

In the case of Sergeant v. Goldsmith, 110 Tex. 482, 221 S. W. 259, 10 A. L. R. 742, our Supreme Court, in passing upon the question of the liability to third persons of stockholders under a trust agreement which attempted, like the agreement in this case, to relieve the shareholders from personal liability for the debts incurred by the trustees in conducting the business for the carrying on of which the trust was created, holds the shareholders liable on the ground that the trustees were the agents of each and all of the shareholders, and the latter should be held liable as principals upon the contracts made by their agent. Liability as partners was denied because the business was not conducted as a

joint undertaking for profit, but its purpose was only the mutual protection of the shareholders against loss by fire through a scheme of mutual insurance. In the instant case the purpose for which the trust was created was conducting a business for the profit of the shareholders, the buying, selling, and development of oil lands and the refining of oil. Any profits made in carrying on this business would come to the shareholders in the form of dividends upon or in the increased value of their shares.

It seems to us that this character of a trading concern for profit comes within the purview of our statute, which declares that "any unincorporated joint-stock company or association" doing business in this state may be sued without making the individual stockholders parties, but that a judgment in such suit against the association would only be binding upon the joint property unless the stockholders are also cited, in which event a judgment against the association "shall be equally binding upon the individual stockholders or members so served, and execution may issue against the property of individual stockholders or members, as well as against the joint property." Articles 6149, 6152, and 6153, Vernon's Sayles' Civil Statutes.

This statute has been construed by our courts as fixing the personal liability as partners of all members or shareholders of an unincorporated business organization. Dee v. Taylor (Tex. Civ. App.) 227 S. W. 361. It seems to us that this is a permissible if not a necessary construction of these statutes.

Counsel for appellants say that it may be conceded that, under the first trust agreement under which the association was organized, the shareholders would be individually liable for the debts of the association, but they very earnestly contend that, under the second declaration of trust, which was the charter of the association at the time the debt involved in this suit was contracted, no such liability existed, because it is clear that under the second declaration of trust the shareholders had no direct control or authority whatever over the trustees or their management of the business of the association. In support of this contention they cite a number of cases from other states, especially from Massachusetts, which seem to sustain them, but we are unwilling to follow these decisions rather than those of our own courts, especially in view of our statutes above cited. But, regardless of our statutes, we think the general and better rule is the one stated by the Supreme Court of Illinois in the case of Hossack v. Ottowa Development Co., 244 Ill. 274, 91 N. E. 439, as follows:

"The legal status of unincorporated societies and voluntary associations has not been very satisfactorily determined on many points. While the courts will generally treat the members as ordinary partners and the associations as partnerships, they will, as far as possible, give effect to the articles of associations or agreement among the members themselves, when they themselves are the only ones interested. If such an association be organized for pecuniary profit, so far as the rights of third persons and liabilities of the members to strangers are concerned, such association is usually considered as a partnership."

In late years much fine writing has been used in describing the beauties of the common-law trust. The development of the doctrine and the extension of the scope of its operation has increased with our ever-increasing business development and expansion, and its usefulness may not be questioned, but it cannot be substituted for statutory methods of limiting the liability of persons associating themselves together for the purpose of conducting a business for profit.

The public in its dealings with such business organizations has a right to the protection afforded them by our statutes regulating the formation of corporations. This protection would be greatly lessened if it should be held that by declaring and recording a declaration of trust persons can associate themselves together for business purposes, giving their organization all the powers of a corporation and limiting their individual liability, without complying with the statutes which require proof of the funds or assets of such an association before a charter will be granted it to conduct its business.

We are of opinion that the judgment of the trial court should be affirmed; and it has been so ordered.

Affirmed.

### On Motions for Additional Findings and to Certify.

The appellants request us to make a specific finding of fact that the indebtedness for which this suit was brought was contracted by the trustees of the Noble Oil & Refining Company while said trustees were "operating under the articles of organization known as the Noble Oil & Refining Company of date June 1, 1918." We thought this fact was sufficiently shown in our original opinion, but, to remove any doubt on the subject, we now expressly find that the indebtedness was contracted by the trustees while they were operating under the second trust agreement, set out in the opinion, which was executed on June 1, 1918.

Appellants also complain of our failure to mention or give any consideration in our opinion to the case of Connally v. Lyons, 82 Tex. 664, 18 S. W. 799, 27 Am. St. Rep. 935. We did not overlook the case, but thought its inapplicability to the facts of this case was so apparent as to render its discussion unneces-

sary in deciding the questions presented by this record. The facts in the case cited are in substance as follows:

M. A. T. Connally, being the owner of property of the value of $13,455.83, consisting of a lot and storehouse in the town of Sulphur Springs, and a mercantile business which she was conducting on said premises, executed a trust deed conveying all of the property to her father, C. P. Connally. After reciting that the consideration for the conveyance was the love and affection of the grantor for her father and brothers, and the assistance they had rendered her in making her business a success, the instrument declares the following trust:

"I do so, however, in trust, except as hereinafter set out, as follows: Said sum of $13,-455.83 is now by me divided into nine equal shares, each share amounting to the sum of $1,495.09; the whole amount is still to be kept together and undivided, except as hereinafter provided, and my said father, C. P. Connally is hereby appointed trustee of said fund, and is to continue said sum and its increase in amount, if any there be, in active and constant operation in the business heretofore by me pursued, to wit, merchandising, and in his own name, or in such name and style as he shall prefer, and is to keep correct accounts of all gains and losses, so that at the end of each year he can by his balance sheet correctly show how said business stands. The one-ninth part of the amount here by me transferred or assigned to my said father is transferred to him in absolute and unconditional sale, together with its increase. One-ninth part thereof with its increase, in case the said sum should by his management be increased, is reserved for myself, and he is to turn over the same to me whenever I or my assignee or legal representative shall demand of him so to do. The other seven-ninths and its increase shall go to the support and maintenance and education, or as much thereof as may in my father's estimation be necessary for that purpose, of my brothers, whose names I have already herein given. Any of my grown brothers, and when they shall become grown, who will remain with my said father, the said trustee herein, and assist him for reasonable wages, such as he may contract to give them, are to be boarded out of said fund, but not otherwise.

"When and after each of my seven brothers shall become of 25 years of age, my said trustee shall advance and pay over to him his pro rata of the amount then on hand, and said trustee may advance and pay over said pro rata share to any one when he thinks safe and prudent to do so even before he arrives at the age of 25 years, and especially so if he seem inclined to attend energetically to any species of business and prosper in said business; but no amount under this condition is to be advanced before the age of 25 years for uncertain or prodigal purposes. I mean by his pro rata above set forth, the one-seventh interest of the brothers' interest or part at the time the advancement shall be made, and without regard to the amount now transferred. The advancement when so made must be taken by said brother in full payment of his portion,

without recourse on the main fund for further advancement. A final settlement shall not be demanded nor had, nor shall any of the beneficiaries of the trust herein created force by law or equity a final settlement by trustee, till my youngest brother Edward shall arrive at the age of 25 years; or, in case of his death, till the period of time when he would be 25 years of age if alive. My father, the said trustee, shall not under any circumstances be required to give bond to faithfully carry out the trust herein created. I trust only to his integrity to do so; and I further provide that said trustee, my father, the said C. P. Connally, shall, for his services in faithfully carrying out this trust, and for his services in managing said mercantile business, have and receive $1,000 per annum of and out of said fund here conveyed in trust as above set forth."

C. P. Connally accepted the trust and continued to execute it until his death, which occurred seven years after he accepted and took charge of the business. After the death of C. P. Connally the district court of Hopkins county, at the suit of the parties interested in the business, appointed Nathan Connally, one of the brother beneficiaries, substitute trustee. Nathan Connally accepted and qualified under this appointment, and conducted the business under the terms of the trust deed. The business conducted under the trust instrument was under the firm name and style of Connally & Co. Several years after Nathan took charge the business failed and all of the property was attached by creditors. The assets were insufficient to pay the creditors and one of them, Lyons & Co., brought suit against Nathan Connally seeking to hold him personally liable for the debt of the firm of Connally & Co. The trial court held that the trustee was personally liable for the goods purchased by him for the business of Connally & Co. while he was conducting said business under the appointment and trust deed before set out. This judgment was affirmed by the Supreme Court. Upon this question the Supreme Court says:

"Trustees of a corporate body with defined powers are not personally liable, and such has been the recognized rule in this state from the early decisions. Traynham v. Jackson, 15 Texas, 170; Dyer v. Sullivan, 18 Texas, 771; Gonzales College v. McHugh, 39 Texas, 348; Snyder v. Wiley & Porter, 59 Texas, 449. But whether or not the trustee of a voluntary association, or a trust estate, is personally liable has not been before our Supreme Court in any case that we can find. That such trustees should be held personally liable is reasonable, because they have in their own hands the means wherewith to reimburse themselves, and should not assume a debt for the benefit of an estate of which they have the sole management and control without prospect of funds for payment thereof. If this principle needed to be enforced by way of illustration, it may be done by the fact that the defendant a few days before the attachment withdrew from the bank the deposit of Connally & Co., amounting to

over $4,000 in cash. In Hill on Trustees, *533, the doctrine is broadly stated, that 'a trustee who carries on any trade with the trust assets for the benefit of the cestui que trusts will be responsible to the creditors, not only to the extent of the trust assets, but also with the whole of his own property, and he may be made bankrupt and proceeded against in the same manner as any other trader. And it is immaterial that the trade is carried on by him in consequence of an express direction in the trust instrument; although the trust property will doubtless be primarily liable to the creditors, and will be first applied so far as it will go in discharge of the liabilities.' Purchases by trustees when made ·in obedience to the trust impose upon them a personal liability; the seller must look to them for payment, and they must look to the trust estate for reimbursement. Taylor v. Mayo, 110 U. S. 330; Hewitt v. Phelps, 105 U. S. 400; Sanford v. Howard, 29 Ala. 684; New v. Nicoll, 73 N. Y. 127. This doctrine is. also recognized in Mason v. Pomeroy (Mass.) 24 Northeastern Reporter, 202, and Odd Fellows' Hall Association' v. McAllister (Mass.) 26 Northeastern Reporter, 862. The Alabama case was where a guardian was held liable. It is also reported in 68 American Decisions, 101, which see for note as to executors and administrators. Our statute of frauds (Rev. Stats. art. 2464) has no application to the facts of this case, and does not affect the rule that would hold the trustee personally liable. Although the plaintiffs knew that the defendant was conducting the mercantile business of which he had the control and management as trustee for the benefit of the persons mentioned in the conveyance from M. A. T. Connally to her father, C. P. Connally, and charged the goods, when sold, to Connally & Co., the defendant was nevertheless personally liable to the plaintiffs for the price of the goods, and it was not necessary first to establish the account as a debt against the trust estate."

If this was all of the opinion it goes without saying that appellant would never have cited the case. But another objection to the judgment made by the appellant in that case was that the trial court erred in not sustaining his exception to the plaintiff's petition on the ground that all of the beneficiaries of the trust were not made parties. In discussing this question the Supreme Court says:

"If Connally & Co. were a partnership, all of the partners would be necessary parties to an action of debt for the price of the goods. It is not necessary to consider whether they would be in a suit for the value of the goods, if the possession thereof was obtained by the fraudulent representations of the defendant, because the court arrived at no conclusion that the goods were fraudulently obtained. But if Connally & Co. was a trust estate managed by the defendant as trustee, it is clear that the beneficiaries of the trust would not be necessary parties to a suit for a debt incurred in the management of the trust, if the trustee should be personally liable therefor; and this question will be considered under another assignment raising that question.

"Mere participation in profits does not constitute partnership, although there should ·be a contract from which they were derived. Buzard v. Bank, 67 Texas, 83. There was no contract of partnership this case. The defendant Nathan Connally acted as trustee under an appointment from the court, and had the entire control and management of the business. There was no 'right of control whatever reserved in the instrument executed by M. A. T. Connally to her father, C. P. Connally, as trustee, either for herself or for the beneficiaries as such. A test of partnership is the right of control over the property or profits, or to make disposition thereof.' 1 Bates on Part. § 37. There was no right whatever in the brothers of the grantor, who were beneficiaries therein, either to control or withdraw their several interests. From the terms of the instrument the business was to be conducted until the youngest was 25 years of age, or, if he died before that time, to such a time as he would have been 25 if he had lived. We must also infer that at least some of the beneficiaries were minors, and it will not be contended that they could be partners, although the instrument might indicate a partnership."

We do not think there is anything in this holding which conflicts with the holding in our original opinion in the instant case.

It is a far cry from the holding in the Connally Case, that the mere receipt by the brothers of Mrs. Connally of gratuitous benefits conferred upon them by a generous donor would not make them partners in the business conducted by the trustee for their benefit under the trust deed, with the execution of which they had no connection, and no control over the business being given them by their donor, to our holding· in this case that appellants, by associating themselves together for the purpose of carrying on a business enterprise for their mutual profit, without complying with the limited partnership statute or the statute providing for the creating of business corporations, became jointly and severally liable for the debts incurred in the conduct of the business. Whether appellants were owners of shares in the business at the time the organization was effected and the declaration of trust executed, or purchased shares issued by the trustees under the trust organization, is immaterial. Any purchaser of shares in such a business organization becomes a business associate of the other shareholders and his right to share in the profits of the business carries with it the burden of responsibility for debts incurred in carrying on the business.

We are not inclined to doubt the soundness of these conclusions, and for that reason would hesitate to certify the question to the Supreme Court. We realize the public importance of the question involved and the desirability of having it settled by an authoritative holding by the Supreme Court, but, as there is another case against appellants involving the identical question (Stevens v. Johnson, 242 S. W. ——) now pending in the Court of Civil Appeals for the Ninth Dis-

trict, having been transferred to that court from the docket of this court, and in which the amount in controversy is sufficient to give the Supreme Court jurisdiction on application for writ of error, the question will, in all probability, be passed upon by the Supreme Court in that case sooner than we could obtain an answer to a certified question.

In these circumstances we must refuse the motion to certify, but we will give appellants the benefit of the Supreme Court's opinion on the question before finally disposing of this appeal by passing the motion for rehearing in this case until the Supreme Court has passed on the question in the Stevens-Johnson Case.